MARY WILLIAMS, PLAINTIFF v. BLUE CROSS BLUE SHIELD OF NORTH CAROLINA, DEFENDANT v. ORANGE COUNTY, ORANGE COUNTY BOARD OF COMMISSION-ERS, AND ORANGE COUNTY HUMAN RELATIONS COMMISSION, COUNTERCLAIM DEFENDANTS

No. 277PA01

(Filed 13 June 2003)

**1. Statutes of Limitation and Repose— constitutionality of statute—continuing violation runs from enforcement**

The statute of limitations did not bar a counterclaim for a declaratory judgment that challenged the constitutionality of an Orange County anti-discrimination ordinance and its enabling legislation because the alleged wrong constitutes a continuing violation. Although Orange County asserts that the statute of limitations ran from the effective date of the ordinance or the enabling legislation, this suit and a companion case were the first two suits brought pursuant to the ordinance and BCBSNC had no certainty that it would run afoul of the ordinance until it was enforced.

**2. Laches— constitutionality of statute—runs from enforcement**

A counterclaim challenging the constitutionality of an Orange County anti-discrimination ordinance was not barred by laches, even though it was filed five and one-half years after the ordinance was adopted and eight and one-half years after the enabling legislation and Orange County had expended large amounts of money, time, and administrative effort in the creation and enforcement of the legislation and the ordinance, because this suit and a companion case were the first two suits brought pursuant to the ordinance and BCBSNC moved expeditiously once the suits were filed.

**3. Constitutional Law— North Carolina—local act—anti-discrimination ordinance**

The employment discrimination provision of an Orange County anti-discrimination ordinance and its enabling legislation constituted local acts within the meaning of Article II, Section 24 of the North Carolina Constitution because, using the reasonable classification test, it could not be concluded that conditions in Orange County are suspect to such an extent that the legislature could legally create a separate classification to address employment discrimination in that county only.

**4. Constitutional Law— North Carolina—local act prohibition—labor and trade**

The employment discrimination provisions of an Orange County anti-discrimination ordinance and its enabling legislation regulated labor and trade and violated the local act provisions of the North Carolina Constitution because the effect was to govern labor practices even though the intent was to prohibit discrimination.

**5. Constitutional Law— North Carolina—local act—permissive—invalid**

Legislation enabling an Orange County anti-discrimination ordinance was invalid (as applied to employment) as a prohibited local act regardless of whether Orange County chose to act on the legislation. A statute's validity is judged by what is possible rather than by what has been done.

**6. Counties— delegation of power from state—ordinance exceeding state and federal standard—employment discrimination**

Orange County did not possess the inherent authority to pass an employment discrimination ordinance under N.C.G.S. § 153A-121(a), which gives counties the power to enact ordinances protecting the health and welfare of its citizens and the peace and dignity of the county, and N.C.G.S. § 160A-174, which provides that state and federal law making an act unlawful do not preclude city ordinances requiring a higher standard of conduct. The ordinance in this case goes beyond requiring a higher standard of conduct and creates a new and independent framework for litigation which substantially exceeds the leeway permitted by these statutes.

Justices MARTIN and BRADY did not participate in the consideration or decision of this case.

On discretionary review pursuant to N.C.G.S. § 7A-31, prior to a determination by the Court of Appeals, of an order for partial summary judgment entered 13 November 2000 and an amended order for partial summary judgment entered 23 January 2001 by Judge Steven A. Balog in Superior Court, Orange County. Heard in the Supreme Court 11 December 2001.

*Maupin Taylor & Ellis, P.A., by Thomas A. Farr, M. Keith Kapp, Kevin W. Benedict, and Terence D. Friedman, for defendant-appellee Blue Cross Blue Shield of North Carolina.*

*Coleman, Gledhill & Hargrave, P.C., by Geoffrey E. Gledhill and S. Sean Borhanian; and The Brough Law Firm, by Michael B. Brough, for defendant-appellants Orange County, Orange County Board of Commissioners, and Orange County Human Relations Commission.*

*Office of the City Attorney, by Emanuel McGirt, for City of Durham, amicus curiae.*

*Elliot, Pishko, Gelbin & Morgan, P.A., by Robert M. Elliot and J. Griffin Morgan, on behalf of the North Carolina Academy of Trial Lawyers; and Seth H. Jaffe, for the American Civil Liberties Union of North Carolina Legal Foundation, Inc., amici curiae.*

*Van Hoy, Reutlinger & Adams, by Philip Marshall Van Hoy and Stephen John Dunn, on behalf of Employers Association and Capital Associated Industries, Inc., amici curiae.*

*Edwards, Ballard, Clark, Barrett and Carlson, P.A., by Kenneth P. Carlson, Jr., on behalf of North Carolina Society of Human Resource Management, amicus curiae.*

*North Carolina Association of County Commissioners, by C. Ronald Aycock, Counsel and Executive Director; and S.C. Kitchen, Durham County Attorney, amicus curiae.*

*Office of the County Attorney, by E. Holt Moore, III, for New Hanover County Human Relations Commission, amicus curiae.*

*City of Asheville, by Robert W. Oast, Jr., City Attorney, amicus curiae.*

*City of Durham, by Emanuel McGirt, City Attorney, amicus curiae.*

*Moore & Van Allen, PLLC, by George M. Teague, on behalf of North Carolina Citizens for Business and Industry; and P. Andrew Ellen for the North Carolina Retail Merchants Association, amici curiae.*

**WILLIAMS v. BLUE CROSS BLUE SHIELD OF N.C.**

[357 N.C. 170 (2003)]

EDMUNDS, Justice.

In this action, we are called upon to determine: (1) whether the North Carolina General Assembly violated Article II, Section 24 of the North Carolina Constitution by ratifying enabling legislation permitting Orange County, the Orange County Board of Commissioners, and the Orange County Human Relations Commission (collectively, counterclaim defendants) to enact and enforce the employment provisions of an antidiscrimination ordinance entitled the Orange County Civil Rights Ordinance (the Ordinance); and (2) whether counterclaim defendants acted illegally in enacting and enforcing the employment provisions of that Ordinance. For the reasons that follow, we affirm the trial court's grant of partial summary judgment to defendant Blue Cross Blue Shield of North Carolina (BCBSNC) and denial of summary judgment to counterclaim defendants.

Pursuant to N.C.G.S. § 160A-492, the Orange County Board of Commissioners (the Board of Commissioners) in 1987 established the Orange County Human Relations Commission (the HRC). *See* N.C.G.S. § 160A-492 (2001) ("[t]he governing body of any city, town, or county is hereby authorized to undertake . . . human relations, community action and manpower development programs . . . [and] may appoint such human relations, community action and manpower development committees or boards and citizens' committees, as it may deem necessary in carrying out such programs and activities"). The Board of Commissioners' mandate to the HRC was that it

(1) study and make recommendations concerning problems in the field of human relationships; (2) anticipate and discover practices and customs most likely to create animosity and unrest and to seek solutions to problems as they arise; (3) make recommendations designed to promote goodwill and harmony among groups in the County irrespective of their race, color, creed, religion, ancestry, national origin, sex, affectional preference, disability, age, marital status or status with regard to public assistance; (4) monitor complaints involving discrimination; (5) address and attempt to remedy the violence, tensions, polarization, and other harm created through the practices of discrimination, bias, hatred, and civil inequality; and (6) promote harmonious relations within the county through hearings and due process of law . . . .

Orange County Civil Rights Ordinance, art. II, sec. 2.1(a), at 1 (effective 1 January 1995) [hereinafter Ordinance].

Thereafter, the HRC advertised and conducted public hearings on discrimination in the areas of employment, housing, and public accommodation and determined that discrimination in those areas existed in Orange County on the basis of race, color, religion, sex, national origin, age, disability, familial status, marital status, sexual orientation, and veteran status. *See* Ordinance, art. II, sec. 2.1(b), (c). As a result of these findings, the Board of Commissioners requested that the North Carolina General Assembly adopt enabling legislation allowing Orange County to enact a comprehensive civil rights ordinance.

In response, the General Assembly ratified chapter 246 of the 1991 Session Laws on 10 June 1991, effective that same day. Act of June 10, 1991, ch. 246, sec. 6, 1991 N.C. Sess. Laws 456, 460. This legislation was passed both to aid Orange County in addressing the concerns raised by the HRC and to authorize Orange County to create or designate a commission to assist in the implementation of the Ordinance. Section 6 of chapter 246 authorized the Board of Commissioners to adopt an ordinance to be referred to either as a "Civil Rights Ordinance" or a "Human Rights Ordinance." *Id.*

On 23 March 1993, the Board of Commissioners adopted a resolution requesting that the Orange County delegation to the General Assembly introduce a rewrite of the 1991 legislation to provide for "local administration of federal and [s]tate laws prohibiting discrimination on the basis of race, color, religion, sex, national origin, age, disability, marital status, familial status, and veteran status." The General Assembly made the requested amendments by enacting section 14 of chapter 358 of the 1993 Session Laws, effective upon ratification on 16 July 1993. Act of July 16, 1993, ch. 358, sec. 14, 1993 N.C. Sess. Laws 1158, 1169.

After the General Assembly passed this enabling legislation, the Board of Commissioners, on 6 June 1994, adopted the Ordinance. On 18 April 1995, the Board of Commissioners adopted another resolution requesting from the General Assembly an amendment to the enabling legislation authorizing the HRC to serve as a deferral agency for cases deferred by the Equal Employment Opportunity Commission (EEOC) and the Department of Housing and Urban Development (HUD), pursuant to planned "worksharing agreements" with those agencies. These agreements would authorize transfer by the EEOC to Orange County of employment discrimination complaints filed with it originating in the county and transfer by HUD to Orange County of housing discrimination complaints arising in the

**WILLIAMS v. BLUE CROSS BLUE SHIELD OF N.C.**

[357 N.C. 170 (2003)]

county. Accordingly, the General Assembly enacted section 2, chapter 339 of the 1995 Session Laws, effective upon ratification on 28 June 1995. Act of June 28, 1995, ch. 339, sec. 2, 1995 N.C. Sess. Laws 802, 803.

In its current form, the Ordinance is an antidiscrimination law applicable only in Orange County and administered by counterclaim defendants. The employment provisions of the Ordinance provide in pertinent part:

> (a) It is unlawful for an employer:
>
> (1) To fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to that individual's compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, disability, familial status, or veteran status.

Ordinance, art. IV, sec. 4.1(a)(1), at 9 (effective 1 January 1996).[1] The Ordinance is enforceable by a private cause of action that permits those affected to recover injunctive relief, back pay, and compensatory and punitive damages up to $300,000. Ordinance, art. VIII, sec. 8.3.2, at 50-53; art. X, at 54-55. Different sections of the Ordinance prohibit discrimination in employment, housing, and public accommodations, as well as the infliction of bodily injury or property destruction on account of the factors listed above. The employment discrimination provision of the Ordinance became effective 1 January 1996 and applies to all employers engaged in an industry affecting commerce who have fifteen or more employees in Orange County. Ordinance, art. III, at 4. Specifically excepted employers include the State of North Carolina and the United States. *Id.* at 4-5. The Ordinance provides that when the HRC receives individual complaints of employment discrimination, it may begin its investigation by requesting a statement of the employer's position regarding the allegations. Ordinance, art. VIII, sec. 8.1, at 39-42. HRC may also issue subpoenas to obtain documents and materials from the employer. *Id.* After completing its investigation, the HRC issues either a finding of cause to believe discrimination occurred or a finding that reasonable cause does not exist. Ordinance, art. VIII, sec. 8.2, at 42-46.

---

1. The Ordinance was enacted 6 June 1994 and was subsequently amended 3 August 1995. All of its articles, with the exception of Article IV, took effect on 1 January 1995. Article IV, the unfair employment provision of the Ordinance that is the subject of the appeal at bar became effective 1 January 1996.

If the HRC finds cause to exist, attempts are made to resolve the complaint by conference, conciliation, and/or persuasion. Ordinance, art. VIII, sec. 8.1, at 42. If these efforts fail, the HRC issues a right-to-sue letter, Ordinance, art. VIII, sec. 8.2, at 45, allowing the complainant to litigate the matter in the Superior Court, Orange County, within one year of receipt of the letter, Ordinance, art. X, at 54. As an alternative if cause is found to exist, the HRC itself can instead choose to litigate the employment discrimination claim before a state administrative law judge (ALJ). Ordinance, art. VIII, sec. 8.2(j)(1), at 45. In such a case, the employer has no opportunity to opt out of the administrative process and demand a jury trial in state court. Ordinance, art. VIII, sec. 8.3.1(a), at 46. Any decision by the ALJ is automatically reviewed by a three-member panel of the HRC commissioners. Ordinance, art. VIII, sec. 8.3.1(j)(1), at 48. A reviewing panel has the discretion to review all aspects of the ALJ's findings, including findings of fact, credibility determinations, and legal findings, and may affirm, modify, or reverse the ALJ's recommended decision. *Id.*

In the case at bar, plaintiff Mary Williams filed claims with the HRC and the EEOC alleging discrimination on the grounds that she had been forced to resign from her employment with BCBSNC because of her age and sex, and also alleging that BCBSNC had retaliated against her for filing the discrimination claim. Following an investigation, the HRC found reasonable cause to believe that BCBSNC had discriminated against plaintiff based on her age and gender, and issued a right-to-sue letter.

Plaintiff filed the suit giving rise to the instant appeal in Superior Court, Orange County, on 23 March 1999, claiming that BCBSNC fired her because of her age and also in retaliation for filing a claim of discrimination with the HRC and the EEOC. Specifically, plaintiff alleged four causes of action: (1) that BCBSNC wrongfully discharged plaintiff because of her age, in violation of North Carolina public policy as set forth in the Equal Employment Practices Act (EEPA), N.C.G.S. ch. 143, art. 49A (2001), and the Ordinance; (2) that BCBSNC wrongfully discharged plaintiff because she filed a charge of age discrimination with the HRC and the EEOC, in violation of North Carolina public policy as set forth in the EEPA and the Ordinance; (3) that BCBSNC discharged plaintiff because of her age, in violation of the Ordinance; and (4) that BCBSNC discharged plaintiff in retaliation for filing a complaint with the HRC in violation of the Ordinance.

**WILLIAMS v. BLUE CROSS BLUE SHIELD OF N.C.**

[357 N.C. 170 (2003)]

BCBSNC removed the suit to the United States District Court for the Middle District of North Carolina, asserting that plaintiff's claims raised substantial questions of federal law. On 29 July 1999, the federal court remanded the case to Superior Court, Orange County, holding that because plaintiff had chosen to assert only state law claims, she was entitled to proceed in state court.

After the trial court on 1 November 1999 approved BCBSNC's motion to add a counterclaim, BCBSNC filed its amended answer and counterclaim. This new filing contained a declaratory judgment action (denominated as the counterclaim), asserting that the enabling legislation and the Ordinance violated Article II, Section 24(1)(j) of the North Carolina Constitution, which prohibits "any local, private, or special act or resolution . . . [r]egulating labor, trade, mining, or manufacturing." N.C. Const. art. II, § 24(1)(j). On 31 July 2000, BCBSNC filed a further amended answer and first amended counterclaim, adding a claim that the Ordinance denied BCBSNC equal protection of the law. Beginning on 6 November 2000, the trial court heard cross-motions for summary judgment. BCBSNC's motion was based upon a claim that the Ordinance's employment discrimination provisions were unconstitutional, while counterclaim defendants' motion argued that the Ordinance was constitutional in its entirety but that, even if it were not, BCBSNC was precluded from attacking the Ordinance based on the affirmative defenses of laches and the statute of limitations.

After hearing arguments and reviewing the parties' briefs, the trial court on 13 November 2000 entered an order declaring the employment provisions of the Ordinance to be in violation of Article II, Section 24 of the North Carolina Constitution, and in violation of the equal protection guarantees of the Fourteenth Amendment to the United States Constitution and Article I, Section 19 of the North Carolina Constitution. The trial court also enjoined counterclaim defendants from enforcing the unlawful employment discrimination provisions of the Ordinance as well as any civil rights investigations and civil actions thereunder. Pursuant to the request of counterclaim defendants, and with the consent of BCBSNC, the trial court on 23 January 2001 amended its order to certify its decision for interlocutory appeal under Rule 54(b) of the North Carolina Rules of Civil Procedure and section 1-277 of the North Carolina General Statutes. N.C. R. Civ. P. 54(b); N.C.G.S. § 1-277 (2001). Counterclaim defendants filed notice of appeal on 19 February 2001. This Court allowed discretionary review on 19 July 2001, prior to determination by the Court of Appeals pursuant to section 7A-31. N.C.G.S. § 7A-31 (2001).

As a preliminary matter, we observe that the only issues before us pertain to the employment provisions of the enabling legislation and the Ordinance. Because the parties had no occasion to brief or argue the constitutionality of the provisions of the enabling legislation and the Ordinance relating to housing and public accommodation and because the following analysis consequently focuses only on the employment provisions, we express no opinion as to the legality of any aspect of either the enabling legislation or the Ordinance unrelated to employment.

[1] We first consider whether the trial court erred in concluding that BCBSNC's declaratory judgment action against counterclaim defendants was not barred by the statute of limitations. Summary judgment may be granted in a declaratory judgment proceeding, *N.C. Farm Bureau Mut. Ins. Co. v. Briley*, 127 N.C. App. 442, 444, 491 S.E.2d 656, 657 (1997), *disc. rev. denied*, 347 N.C. 577, 500 S.E.2d 82 (1998), where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law," N.C.G.S. § 1A-1, Rule 56(c) (2001). "When the statute of limitations is properly pleaded and the facts of the case are not disputed[,] resolution of the question becomes a matter of law and summary judgment may be appropriate." *Marshburn v. Associated Indem. Corp.*, 84 N.C. App. 365, 369, 353 S.E.2d 123, 126, *disc. rev. denied*, 319 N.C. 673, 356 S.E.2d 779 (1987).

Counterclaim defendants contend that summary judgment should have been granted because the claims of BCBSNC are barred by the statute of limitations. Their position is that the time period for BCBSNC's filing of a constitutional challenge to the Ordinance or the enabling legislation began to run on the date the enabling legislation or the Ordinance became effective, which was 28 June 1995 for the enabling legislation or 1 January 1996 for the Ordinance. Further, counterclaim defendants contend that the applicable statute of limitations for BCBSNC's action is three years based upon either N.C.G.S. § 1-52(2) or 1-52(5) and that BCBSNC failed successfully to file suit within that period because BCBSNC filed its counterclaim motion on 1 November 1999. We disagree, and for the reasons that follow, we affirm the trial court's granting of summary judgment in favor of BCBSNC as to this issue.

The general rule for claims other than malpractice is that a cause of action accrues as soon as the right to institute and maintain a suit

arises. *See* N.C.G.S. § 1-15(a) (2001); *Thurston Motor Lines, Inc. v. General Motors Corp.*, 258 N.C. 323, 325, 128 S.E.2d 413, 415 (1962). However, this Court has also recognized the "continuing wrong" or "continuing violation" doctrine as an exception to the general rule. *See Faulkenbury v. Teachers' & State Employees' Ret. Sys. of N.C.*, 345 N.C. 683, 694-95, 483 S.E.2d 422, 429-30 (1997). When this doctrine applies, a statute of limitations does not begin to run until the violative act ceases. *See Virginia Hosp. Ass'n. v. Baliles*, 868 F.2d 653, 663 (4th Cir. 1989). "A continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation." *Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir. 1981). To determine whether BCBSNC suffers from a continuing violation, we examine this case under a test that considers "[t]he particular policies of the statute of limitations in question, as well as the nature of the wrongful conduct and harm alleged," as set out in *Cooper v. United States*, 442 F.2d 908, 912 (7th Cir. 1971). *See Faulkenbury v. Teachers' & State Employees' Ret. Sys. of N.C.*, 108 N.C. App. 357, 368, 424 S.E.2d 420, 425 (utilizing the *Cooper* test to determine if a continuing violation exists), *aff'd per curiam*, 335 N.C. 158, 436 S.E.2d 821 (1993); *National Adver. Co. v. City of Raleigh*, 947 F.2d 1158, 1167 (4th Cir. 1991) (same), *cert. denied*, 504 U.S. 931, 118 L. Ed. 2d 593 (1992). In particular, we must examine the wrong alleged by BCBSNC to determine if the purported violation is the result of "continual unlawful acts," each of which restarts the running of the statute of limitations, or if the alleged wrong is instead merely the "continual ill effects from an original violation." *Ward v. Caulk*, 650 F.2d at 1147.

Our review of the record satisfies us that the alleged wrong here constitutes a continuing violation. To date, BCBSNC has been the subject of at least two lawsuits as well as numerous proceedings under the Ordinance. When the enabling legislation and the Ordinance were first enacted, BCBSNC was just another employer in Orange County to which these new laws applied; any harm to BCBSNC was both prospective and speculative. The alleged wrongs to BCBSNC became apparent only upon enforcement of the Ordinance through the filing of lawsuits and proceedings against BCBSNC. Thus, BCBSNC is not merely suffering the ill effects of a single alleged original wrong that accrued when the enabling legislation and the Ordinance were enacted. Instead, it has been subjected to a number of alleged wrongs through the application of the enabling legislation and the Ordinance. "[I]f the same alleged violation was committed at the time of each act, then the limitations

period begins anew with each violation . . . ." *Perez v. Laredo Junior Coll.*, 706 F.2d 731, 733 (5th Cir. 1983), *cert. denied*, 464 U.S. 1042, 79 L. Ed. 2d 172 (1984).

Counterclaim defendants cite several cases to support their position that the alleged wrong occurred upon enactment of the applicable laws and that any further wrong was no more than the ill effects of an original violation. *See Capital Outdoor Adver., Inc. v. City of Raleigh*, 337 N.C. 150, 164, 446 S.E.2d 289, 297 (1994) (where owner of outdoor advertising company challenged ordinance requiring amortization and ultimate removal of nonconforming signs, limitation period began on effective date of ordinance because "[i]t was on that precise date that the expected useful life of the plaintiffs' billboards was foreshortened"); *National Adver. Co. v. City of Raleigh*, 947 F.2d 1158 (where ordinance required that nonconforming signs be removed within five and one-half years, limitations period began to run when ordinance enacted because plaintiff advertiser was immediately on notice that his signs would have to be taken down at a time certain in the future); *Rozar v. Mullis*, 85 F.3d 556 (11th Cir. 1996) (where landfill placed in predominately African-American neighborhood, two-year statute of limitations applied to bar suit against county defendants because plaintiffs' injury accrued when county selected the landfill site at a public hearing, but did not bar suit against state defendants, who became involved only during the later permitting process). We believe that these cases are distinguishable from the case at bar. In both *Capital Outdoor Advertising* and *National Advertising Company*, the plaintiffs were provided notice at the moment the ordinances were passed that they would suffer a specific loss at a specific time. By contrast, BCBSNC had no certainty that it would run afoul of the Ordinance until the instant suit and companion suit were filed against it. *Rozar* involved a taking, in that the value of the plaintiffs' property would be diminished by the landfill. "This argument misapprehends the differences between a statute that effects a taking and a statute that inflicts some other kind of harm." *Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 688 (9th Cir. 1993), *cert. denied*, 510 U.S. 1093, 127 L. Ed. 2d 217 (1994). In takings cases, there is a "single harm, measurable and compensable when the statute is passed." *Id.*

Unlike the cases cited by counterclaim defendants, the alleged wrong in the case at bar "is continuing, or does not occur until the statute is enforced—in other words, until it is applied." *Id.* According to BCBSNC, the suit brought by plaintiff here against BCBSNC, and a

companion case, were the first two lawsuits brought against an employer pursuant to the Ordinance. BCBSNC asserted a challenge to the constitutionality of the Ordinance nine months after plaintiff's lawsuit was filed and only four and a half months after this case was remanded from the federal district court. Similarly, BCBSNC sought to challenge the Ordinance eleven months after the companion lawsuit was filed. Thus, BCBSNC's action in the case at bar was brought well within any limitations period triggered by the suits and proceedings brought against it.

These assignments of error are overruled.

[2] We next address whether the trial court erred in concluding that BCBSNC's declaratory judgment action against counterclaim defendants was not barred by the equitable doctrine of laches. Like the statute of limitations, laches may be raised properly on a motion for summary judgment. *See Taylor v. City of Raleigh*, 290 N.C. 608, 622, 227 S.E.2d 576, 584 (1976); *Capps v. City of Raleigh*, 35 N.C. App. 290, 241 S.E.2d 527 (1978).

> In equity, where lapse of time has resulted in some change in the condition of the property or in the relations of the parties which would make it unjust to permit the prosecution of the claim, the doctrine of laches will be applied. Hence, what delay will constitute laches depends upon the facts and circumstances of each case.

*Teachey v. Gurley*, 214 N.C. 288, 294, 199 S.E. 83, 88 (1938). Our review of this issue involves a three-part analysis:

> (1) Do the pleadings, affidavits and exhibits show any dispute as to the facts upon which [counterclaim] defendants rely to show laches on the part of plaintiffs [technically, defendants in this case]? (2) If not, do the undisputed facts, if true, establish plaintiffs' laches? (3) If so, is it appropriate that [counterclaim] defendants' motion for summary judgment, made under G.S. 1A-1, Rule 56(b), be granted?

*Taylor v. City of Raleigh*, 290 N.C. at 621, 227 S.E.2d at 584.

Here, counterclaim defendants contend that BCBSNC's delay in filing a constitutional challenge—almost five and a half years after the Ordinance was adopted and eight and a half years from the effective date of the enabling legislation—has caused a sufficient detrimental change in their position that laches should act as a bar to suit.

Counterclaim defendants argue that BCBSNC's delay in bringing the challenge, when considered along with the large amounts of money, time, and administrative effort expended in the creation and enforcement of the enabling legislation and the Ordinance, has caused it materially to change its position such that it would be prejudicial and unfair to allow BCBSNC's challenge to continue.

As detailed above, BCBSNC indicates in its brief that the suit at bar and the companion case were the first two lawsuits brought against an employer pursuant to the Ordinance. We have held " 'the mere passage or lapse of time is insufficient to support a finding of laches; for the doctrine of laches to be sustained, the delay must be shown to be unreasonable and must have worked to the disadvantage, injury or prejudice of the person seeking to invoke it.' " *Id.* at 622-23, 227 S.E.2d at 584-85 (quoting 22 Am. Jur. 2d *Declaratory Judgments* § 78 (1965)). We do not discount the expense and good-faith effort expended by Orange County. Nevertheless, the record shows that BCBSNC moved expeditiously once these suits were filed against it. Accordingly, we believe that there was no unreasonable delay in bringing this challenge.

These assignments of error are overruled.

**[3]** We next consider whether the trial court erred in its holding that the employment discrimination provisions of the Ordinance and its enabling legislation violated Article II, Section 24 of the North Carolina Constitution. This section of the Constitution, entitled "Limitations on local, private, and special legislation," provides in pertinent part:

(1) *Prohibited subjects.* The General Assembly shall not enact any local, private, or special act or resolution:

. . . .

(j) Regulating labor, trade, mining, or manufacturing;

. . . .

(3) *Prohibited acts void.* Any local, private, or special act or resolution enacted in violation of the provisions of this Section shall be void.

N.C. Const. art. II, § 24(1)(j), (3).

Counterclaim defendants argue that neither the enabling legislation nor the Ordinance is a local act under Article II, Section 24.

Further, counterclaim defendants contend that even if this Court determines that the enabling legislation and the Ordinance are local acts, they are not prohibited local acts because they seek to regulate *discrimination* (which is not a forbidden purpose) rather than labor or trade.

Our review of counterclaim defendants' argument is two-fold. First, we must determine whether the enabling legislation and the Ordinance are local acts as contended by BCBSNC or whether they are general laws as contended by counterclaim defendants. Second, if they are found to be local acts, we must determine whether the enabling legislation and the Ordinance regulate labor or trade. As we make this determination, we are aware that:

> It is well settled in this State that the courts have the power, and it is their duty in proper cases, to declare an act of the General Assembly unconstitutional—but it must be plainly and clearly the case. If there is any reasonable doubt, it will be resolved in favor of the lawful exercise of their powers by the representatives of the people.

*Glenn v. Board of Educ.*, 210 N.C. 525, 529-30, 187 S.E. 781, 784 (1936).

"A statute is either 'general' or 'local'; there is no middle ground." *High Point Surplus Co. v. Pleasants*, 264 N.C. 650, 656, 142 S.E.2d 697, 702 (1965). We have observed that "no exact rule or formula capable of constant application can be devised for determining in every case whether a law is local, private or special or whether general." *McIntyre v. Clarkson*, 254 N.C. 510, 517, 119 S.E.2d 888, 893 (1961). Consequently, since the enactment of Article II, Section 24 (originally Article II, Section 29, *see Smith v. County of Mecklenburg*, 280 N.C. 497, 506, 187 S.E.2d 67, 73 (1972)), we have set out alternative methods for determining whether a law is general or local. *See City of New Bern v. New Bern-Craven Cty. Bd. of Educ.*, 338 N.C. 430, 435-36, 450 S.E.2d 735, 738-39 (1994). In earlier decisions, we held that if the legislation impacted a majority of the counties, the law was general. *See State v. Dixon*, 215 N.C. 161, 165, 1 S.E.2d 521, 523 (1939). Later, we established what has become known as the "reasonable classification" test. *See McIntyre v. Clarkson*, 254 N.C. at 518-19, 119 S.E.2d at 894-95. This test considers how the law in question classifies the persons or places to which it applies. Pursuant to this test, the "[c]lassification must be reasonable and . . . must be based on a reasonable and tangible distinction and operate the same

on all parts of the state under the same conditions and circumstances." *Id.* at 519, 119 S.E.2d at 894. A law is deemed local

> where, by force of an inherent limitation, it arbitrarily separates some places from others upon which, but for such limitation, it would operate, where it embraces less than the entire class of places to which such legislation would be necessary or appropriate having regard to the purpose for which the legislation was designed, and where the classification does not rest on circumstances distinguishing the places included from those excluded.

*Id.* at 518, 119 S.E.2d at 894. On the other hand,

> the constitutional prohibition against local acts simply commands that when legislating in certain specified fields the General Assembly must make rational distinctions among units of local government which are reasonably related to the purpose of the legislation. A law is general if "any rational basis reasonably related to the objective of the legislation can be identified which justifies the separation of units of local government into included and excluded categories."

*Adams v. N.C. Dep't. of Natural & Econ. Res.*, 295 N.C. 683, 691, 249 S.E.2d 402, 407 (1978) (quoting Joseph S. Ferrell, *Local Legislation in the North Carolina General Assembly*, 45 N.C. L. Rev. 340, 391 (1967)).

In *Town of Emerald Isle v. State*, 320 N.C. 640, 360 S.E.2d 756 (1987), we departed from the reasonable classification test enunciated in *Adams* where the act in question applied only to a site-specific portion of land on a particular beach. Instead, we applied a test that examined "the extent to which the act in question affects the general public interests and concerns," *id.* at 651, 360 S.E.2d at 763, because the reasonable classification test was "ill-suited to the question presented in [that] case, since by definition a particular public pedestrian beach access facility must rest in but one location," *id.* at 650, 360 S.E.2d at 762.

Our review of the various analyses for determining whether an act is local or general satisfies us that the reasonable classification test is most appropriate to the case at bar. While, in this case, the enabling legislation and the Ordinance allowing for the creation of a comprehensive civil rights ordinance apply only to Orange County, this legislation is not site-specific as in *Emerald Isle* be-

cause "[s]uch a legislated change could be effected as easily in [Orange County] as in any other [county] in the state." *City of New Bern v. New Bern-Craven Cty. Bd. of Educ.*, 338 N.C. at 436, 450 S.E.2d at 739. Consequently, the *Emerald Isle* analysis is inapplicable to this case.

Under a reasonable classification analysis, "the distinguishing factors between a valid general law and a prohibited local act are the related elements of reasonable classification and uniform application." *Adams v. N.C. Dep't. of Natural & Econ. Res.*, 295 N.C. at 690, 249 S.E.2d at 407. Legislative classification of conditions, persons, places, or things is reasonable when it is "based on [a] rational difference of situation or condition." *High Point Surplus Co. v. Pleasants*, 264 N.C. at 656, 142 S.E.2d at 702.

Based upon our earlier decisions, we must determine in this case whether the legislature had a rational basis to justify singling out Orange County through the enabling legislation, thereby allowing this one county to create its own civil rights ordinance enforcing particular employment rights of Orange County citizens. Phrased differently, we must determine whether the General Assembly should have granted Orange County the power, rationally based upon some situation unique to that county, to create and enforce additional employment rights beyond those accorded any other county in this state. Based upon our thorough review of the record, we determine that neither the enabling legislation passed by the legislature nor the Ordinance suggests any rational basis justifying treatment of Orange County differently from all other North Carolina counties as to those rights.

A history of the promulgation of Article II, Section 24 reveals:

> The organic law of the State was originally drafted and promulgated by a convention which met at Halifax in December, 1776. During the ensuing 140 years, the Legislature of North Carolina possessed virtually unlimited constitutional power to enact local, private, and special statutes. This legislative power was exercised with much liberality, and produced a plethora of local, private, and special enactments. As an inevitable consequence, the law of the State was frequently one thing in one locality, and quite different things in other localities. To minimize the resultant confusion, the people of North Carolina amended their Constitution at the general election of 1916 so as to deprive their Legislature of the power to enact local, private, or special

acts or resolutions relating to many of the most common subjects of legislation.

. . ,. .

In thus amending their organic law, the people were moti-vated by the desire that the General Assembly should legislate for North Carolina in respect to the subjects specified as a single united commonwealth rather than as a conglomeration of innu-merable discordant communities. To prevent this laudable desire from degenerating into a mere pious hope, they decreed in emphatic and express terms that "any local, private, or special act or resolution passed in violation of the provisions of this section shall be void."

*Idol v. Street*, 233 N.C. 730, 732-33, 65 S.E.2d 313, 314-15 (1951) (quot-ing N.C. Const. of 1868, art. II, sec. 29 (1917) (now Article II, Section 24, as previously noted); *see also* John V. Orth, *The North Carolina State Constitution: A Reference Guide* 89-90, 166-67 (1993).

A brief comparison of the Ordinance with the employment dis-crimination law applicable across North Carolina reveals that the enabling legislation and the Ordinance generate different law in one locality from that applicable to other localities within the state. First, the Ordinance creates in Orange County two additional protected categories of employment discrimination apparently found nowhere else in the state.[2] The Ordinance prevents Orange County employers with fifteen or more employees from discriminating because of "familial status" or "veteran status," Ordinance, art. IV, sec. 4.1(a)(1), at 9, classifications that are not found in either the EEPA or section 2000e-2 of title 42 of the United States Code, 42 U.S.C. § 2000e-2 (2000) ("Unlawful employment practices"). Second, a method for enforcing employment discrimination suits has been created in Orange County that exists nowhere else in North Carolina. Thus, in a single dispute involving one employee, an employer in Orange County may be investigated and sued by either the HRC or the EEOC.[3] In

2. We use the word "apparently" advisedly. The briefs indicate that the City of Durham and New Hanover County also have human relations commissions that enforce local employment discrimination ordinances. Those ordinances are not before us. However, even if their provisions mirror those of the Orange County Ordinance and create similar additional employment rights in the City of Durham and in New Hanover County, their existence in those limited locales does not affect our analysis that the enabling legislation and the employment provisions of the Orange County Ordinance constitute a local law.

3. We note that a plaintiff may always bring suit as an individual upon receipt of a right-to-sue letter.

**WILLIAMS v. BLUE CROSS BLUE SHIELD OF N.C.**

[357 N.C. 170 (2003)]

other words, as acknowledged in deposition by the Director of the Orange County Department of Human Rights and Relations, such an Orange County employer can be compelled to respond to two different government investigations and suits. By contrast, an employer elsewhere in North Carolina may be subject to investigation by the EEOC or the North Carolina Department of Administration's Human Relations Commission, *see* N.C.G.S. § 143-422.3, but can only be sued through a federal claim brought by the EEOC.

Additionally, an employee working in Orange County may benefit from a longer statute of limitations for the raising of administrative claims than employees working in other counties. Employers in any county other than Orange may raise a statute of limitations defense if an employee fails to file a complaint with the EEOC within 180 days of the alleged unlawful act. *See* 42 U.S.C. § 2000e-5(e) (2000). In Orange County, however, by virtue of the Ordinance, an employer may not raise a statute of limitations defense unless the charge was filed after 300 days of the alleged act. *See id.*; *see also* 29 U.S.C. § 626(d)(2) (2000).

Similarly, the statute of limitations period for the filing of discrimination lawsuits differs between Orange County employers and employers elsewhere. A North Carolina employer not in Orange County may assert a statute of limitations defense against an employee who fails to file suit within ninety days of receiving a right-to-sue letter from the EEOC. *See* 42 U.S.C. § 2000e-5(f)(1); 29 U.S.C. § 626(e). In contrast, while the limitations period for EEOC complaints remains the same, an employer in Orange County may not assert a statute of limitations defense for discrimination claims filed under the Ordinance unless the employee fails to file suit one year after receiving a right-to-sue notice from the HRC. Ordinance, art. X, at 54.

In addition, there is no evidence in the record to suggest that employment practices in Orange County differ in any significant way from the employment practices in other North Carolina counties. Consequently, we are unable to conclude that conditions in Orange County alone are suspect to such an extent that the legislature legally could create a separate classification to address employment discrimination in that county only. *See City of New Bern v. New Bern-Craven Cty. Bd. of Educ.*, 338 N.C. at 438, 450 S.E.2d at 740 (no rational basis to separate New Bern from other cities for special legislative attention regarding the designation of an appropriate inspection department); *Smith v. County of Mecklenburg*, 280 N.C. at

507-08, 187 S.E.2d at 74 (no particular features in Mecklenburg and Moore Counties that differentiate them from other counties with reference to the right of their citizens to decide whether to have liquor by the drink); *High Point Surplus Co. v. Pleasants*, 264 N.C. at 657, 142 S.E.2d at 703 (no reasonable distinction to demonstrate that a Sunday observance law is more necessary for the welfare of Wake County than other counties); *Treasure City of Fayetteville, Inc. v. Clark*, 261 N.C. 130, 134-35, 134 S.E.2d 97, 100-01 (1964) (no reasonable basis to exempt certain counties from Sunday closing statute than other counties); *McIntyre v. Clarkson*, 254 N.C. at 524-25, 119 S.E.2d at 898 (no reasonable and distinctive feature to allow certain counties to have different laws regarding the appointment of justices of the peace). Based on all the considerations set out above, we hold that the employment provisions of the enabling legislation and the Ordinance are local laws.

Counterclaim defendants contend that the creation and implementation of the Ordinance was the fruit of countless hours of thorough research regarding discrimination in Orange County. We do not doubt the difficult and well-intentioned labor that has been expended in the planning and implementation of this employment rights program, nor do we question the commendable motives behind Orange County's effort to expunge as many vestiges of discrimination as is humanly possible. Our role, however, is to determine whether the method employed by Orange County comports with the Constitution of North Carolina. Any local, private, or special act or resolution enacted in violation of Article II, Section 24 shall be void, "no matter how praiseworthy or wise [its provisions] may be." *Idol v. Street*, 233 N.C. at 733, 65 S.E.2d at 315.

> It was the purpose of [Article II, Section 24] to free the General Assembly from the enormous amount of petty detail which had been occupying its attention, to enable it to devote more time and attention to general legislation of statewide interest and concern, to strengthen local self-government by providing for the delegation of local matters by *general laws* to local authorities, and to require uniform and coordinated action under general laws on matters related to the welfare of the whole State.

*High Point Surplus Co. v. Pleasants*, 264 N.C. at 656, 142 S.E.2d at 702. Therefore, if the General Assembly should undertake to address employment discrimination by means of a state statute, Article II, Section 24 requires that it enact either a statewide law applicable to employers and their employees regardless of where they reside

within the state or a general law that makes reasonable classifications based upon rational differences of circumstances. That process was not followed here. Upholding the particularized laws in this case could lead to a balkanization of the state's employment discrimination laws, creating a patchwork of standards varying from county to county. The end result would be the "conglomeration of innumerable discordant communities" that Article II, Section 24 was enacted to avoid. *Id.* at 732, 65 S.E.2d at 315.

[4] Having determined that the enabling legislation and the Ordinance are local laws, we next must consider whether they regulate labor or trade. Previously, this Court has adopted the definition of to "regulate" as " 'to govern or direct according to rule; . . . to bring under the control of law or constituted authority.' " *State v. Gulledge,* 208 N.C. 204, 208, 179 S.E. 883, 886 (1935) (quoting *Webster's New International Dictionary* 2099 (2d ed. 1935)), *quoted in Cheape v. Town of Chapel Hill,* 320 N.C. 549, 559, 359 S.E.2d 792, 798 (1987). "Labor" has been defined as "compensated employment," *State v. Chestnutt,* 241 N.C. 401, 403, 85 S.E.2d 297, 299 (1955), and "trade" has been defined as "a business venture for profit and includes any employment or business embarked in for gain or profit," *High Point Surplus Co. v. Pleasants,* 264 N.C. at 655-56, 142 S.E.2d at 702. After reviewing the record, we believe the enabling legislation and the Ordinance regulate labor in Orange County.

As noted above, counterclaim defendants contend that the acts seek only to regulate discrimination, not labor or trade. However, the record demonstrates that while the intent of the enabling legislation and the Ordinance is to prohibit discrimination in the workplace, the effect of these enactments is to govern the labor practices of "person[s] engaged in an industry affecting commerce who has 15 or more employees" in Orange County. Numerous aspects of the employer/employee relationship fall within the ambit of the Ordinance, from hiring through resignation, retirement, or termination. The Ordinance requires covered employers to conduct their internal practices pursuant to the requirements of the Ordinance or face the possibility of civil suit by either an employee or the HRC. By seeking to curb unlawful discrimination by regulating covered employers, the enabling legislation and the Ordinance have the practical effect of regulating labor, as forbidden by Article II, Section 24.

In their briefs and at oral argument, the parties discussed the enabling legislation and the Ordinance in terms of trade. Although

our conclusion that the acts regulate labor is dispositive as to this issue, we believe that they regulate trade as well. Most of the employers affected by the Ordinance are businesses operated for gain or profit. Regulation of these employers has the practical effect of regulating trade. *See Smith v. County of Mecklenburg*, 280 N.C. at 509, 187 S.E.2d at 75 (statute authorizing an election in Mecklenburg County to determine whether liquor by the drink could be sold under rules and regulations created by the local county board was determined to be a regulation of trade); *High Point Surplus Co. v. Pleasants*, 264 N.C. at 656-57, 142 S.E.2d at 702-03 (local ordinance and statute that excepted forty-eight counties from its operation of establishing Sunday sales laws was determined to be a regulation of trade); *Orange Speedway, Inc. v. Clayton*, 247 N.C. 528, 533, 101 S.E.2d 406, 410 (1958) (statute that forbade the holding of motorcycle or automobile races on Sunday in Orange County was determined to be a regulation of trade).

**[5]** Counterclaim defendants also argue that the enabling legislation does not "directly" regulate trade or labor because the legislation merely gives Orange County the option of adopting an employment discrimination ordinance. ·Therefore, counterclaim defendants claim that "permissive" legislation, such as the enabling legislation, does not violate Article II, Section 24 in this case. Even though we have concluded that the enabling legislation and the Ordinance regulate labor, we address this argument because its validity is not dependent on the purpose for which the local law was passed. In other words, if the legislation as passed is valid because it is "permissive," it does not matter that the purpose of the act is to regulate labor as opposed to trade.

In *High Point Surplus Company*, this Court determined that legislation enabling fifty-two counties to prohibit sales on Sunday while excepting the remaining forty-eight counties was an unconstitutional local law regulating trade. *High Point Surplus Co. v. Pleasants*, 264 N.C. at 656-57, 142 S.E.2d at 702-03. The legislation did not mandate that the fifty-two counties prohibit sales, but instead enabled the local board of commissioners of these fifty-two counties to make such determinations applicable to the incorporated towns and cities within the counties, so long as each town's or city's governing body by resolution agreed to such regulation. *Id.* at 653-54, 142 S.E.2d at 700. The defendant-appellees in *High Point Surplus Company* sought to distinguish the Sunday sales legislation from our decision in *Treasure City of Fayetteville, Inc. v. Clark*, 261 N.C. 130, 134

S.E.2d 97, by pointing out that the statute in *Treasure City* involved a mandatory Sunday closing law, "whereas [this statute] is permissive and takes effect only when invoked by action of the county commissioners of an included county." *High Point Surplus Co. v. Pleasants*, 264 N.C. at 657, 142 S.E.2d at 703. We were unpersuaded by this argument because "[a] statute's validity must be judged not by what has actually been done under it but by what is possible under it." *Id.*; *see also State v. Smith*, 265 N.C. 173, 143 S.E.2d 293 (1965) (statute authorizing the Forsyth County Board of Commissioners, after adoption by resolution, to regulate the operation of dance clubs or pool halls near a church or school held to be unconstitutional local act regulating trade); *McIntyre v. Clarkson*, 254 N.C. 510, 119 S.E.2d 888 (permissive statute that enables county commissioners, upon approval by county resolution, to determine the number of justices of the peace to be appointed held to be unconstitutional local and special law); *Food Fair, Inc. v. City of Henderson*, 17 N.C. App. 335, 194 S.E.2d 213 (1973) (permissive statute that authorized the governing bodies of three counties to refuse to issue license for the sale of wine within corporate limits held to be an unconstitutional local act regulating trade). Accordingly, counterclaim defendants' argument that the purportedly permissive nature of the enabling legislation renders it valid is unpersuasive. We hold that this legislation, by giving the power to Orange County to enact the employment legislation, is invalid, whether or not Orange County had chosen to act on that power.

**[6]** Finally, counterclaim defendants argue that, even if the enabling legislation is unconstitutional, Orange County possesses the inherent authority to pass the employment discrimination Ordinance at bar. They cite section 153A-121(a), which gives a county the power to enact ordinances that "define, regulate, prohibit, or abate acts, omissions, or conditions detrimental to the health, safety, or welfare of its citizens and the peace and dignity of the county," N.C.G.S. § 153A-121(a), and section 160A-174, which provides that "[t]he fact that a State or federal law, standing alone, makes a given act, omission, or condition unlawful shall not preclude city ordinances requiring a higher standard of conduct or condition," N.C.G.S. § 160A-174 (2001).[4] However, under the Ordinance, a citizen is given subpoena

_____

4. Counterclaim defendants also cite to N.C.G.S. § 153A-4 ("Broad construction"), N.C.G.S. § 153A-123 ("Enforcement of ordinances"), and N.C.G.S. § 153A-134 ("Regulating and licensing businesses, trades, etc."). We do not interpret any of these statutes as providing Orange County with the authority to enact its own comprehensive employment rights law.

power and the right to sue, even in the absence of finding of cause by the HRC. Under the Ordinance, the citizen may seek an injunction against an employer and may recover back pay and compensatory and punitive damages. By creating a civil relationship and concomitant private cause of action by one citizen against another, the Ordinance goes far beyond merely "requiring a higher standard of conduct or condition." Such a new and independent framework for litigation substantially exceeds the leeway permitted to individual counties by these statutes. Consequently, we are satisfied that Orange County's employment discrimination Ordinance is not saved by these statutory provisions.

In this analysis, as before, we are addressing only the employment discrimination provisions of the Ordinance. Aspects of the Ordinance dealing with housing and public accommodation, including such matters as any enforcement mechanisms and remedies available under those portions of the Ordinance, are not before us, and we express no opinion as to whether Orange County possessed inherent authority to address these areas.

These assignments of error are overruled.

Because we hold that the enabling legislation and the Ordinance violate Article II, Section 24 of the North Carolina Constitution, we need not address the additional assignments of error as to whether the acts are violative of equal protection under the federal and state Constitutions. Based upon the foregoing, we hold that the trial court did not err in concluding that the enabling legislation and the Ordinance pertaining to employment discrimination are unconstitutional acts.

AFFIRMED.

Justice MARTIN and Justice BRADY did not participate in the consideration or decision of this case.