IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA15-1333

Filed: 2 August 2016

Polk County, No. 11CVS36

ACTS RETIREMENT-LIFE COMMUNITIES, INC., Plaintiff,

v.

TOWN OF COLUMBUS, NORTH CAROLINA, Defendant.

Appeal by plaintiff and defendant from judgment entered 18 June 2015 by Judge Jeffrey P. Hunt in Polk County Superior Court. Heard in the Court of Appeals 11 May 2016.

> *Parker, Poe, Adams & Bernstein L.L.P., by Benjamin Sullivan, for plaintiff.*
>
> *Cranfill Sumner & Hartzog LLP, by Ryan D. Bolick and Virginia M. Wooten, for defendant.*

ELMORE, Judge.

In June 2002, the Town Council in the Town of Columbus, North Carolina (defendant) voted to reclassify two water meters from commercial to residential at Tryon Estates, a retirement facility owned and operated by ACTS Retirement-Life Communities, Inc. (plaintiff). In response, plaintiff filed a complaint in February 2011. After a bench trial, the trial court ordered that the June 2002 reclassification and concurrent change in billing methodology was arbitrary, capricious, unreasonable, and unreasonably discriminatory in violation of N.C. Gen. Stat. §

160A-314. Defendant appeals and plaintiff has filed a cross appeal. Because we conclude that the statute of limitations bars plaintiff's complaint, we reverse and remand.

## I. Background

Tryon Estates has received water and sewer services from defendant since it opened in 1992. From 1992 through June 2002, defendant billed Tryon Estates at the commercial rates for such services. On 18 June 2002, the Town Council held a meeting in which it decided that two of the six water meters at Tryon Estates should be classified as residential, not commercial, for billing purposes. One of the relevant two meters serves, *inter alia*, 276 individual apartment units, and the other meter serves ten villas, all located within the Tryon Estates community. The reclassification took effect on 1 July 2002 and, based on defendant's fee schedule which contained different rates for residential and commercial water and sewer services, resulted in plaintiff receiving higher monthly water and sewer bills.

On 9 February 2011, plaintiff filed a complaint in Polk County Superior Court seeking a declaration that defendant's decision to charge Tryon Estates the commercial rate for some water and sewer services but the residential rate for others (1) violated defendant's Charter; (2) violated Article I, Section 1 of the North Carolina Constitution; (3) was a form of discriminatory taxation in violation of Article I, Section 1 and Article V, Section 2 of the North Carolina Constitution as well as the

Fourteenth Amendment to the United States Constitution; and (4) violated the equal protection and due process clauses of the Fourteenth Amendment to the United States Constitution. Plaintiff also alleged a claim for relief based on unjust enrichment and requested a permanent injunction requiring defendant to reclassify the two water meters as commercial.

After defendant filed a notice of removal to the United States District Court for the Western District of North Carolina, the federal district court filed a Memorandum of Decision and Order remanding the matter to Polk County Superior Court due to lack of subject matter jurisdiction under the Johnson Act, 28 U.S.C. § 1342. Subsequently, plaintiff filed a notice of dismissal of some of its claims under Rule 41(a), dismissing its third, fourth, and sixth claims, solely to the extent they relied on the United States Constitution or federal law. Prior to trial, defendant filed a motion to dismiss and both parties filed motions for summary judgment, all of which were denied. Finally, after a bench trial, the Honorable Jeffrey P. Hunt entered a judgment in which he ordered the following:

> By way of DECLARATORY JUDGMENT, this COURT rules hereby that [defendant's] June 2002 reclassifications and concurrent changes in billing methodology, including the application of base monthly charges per each individual villa and apartment unit, is arbitrary, capricious, and unreasonable and, in its effects on [plaintiff], is unreasonably discriminatory, all in violation of N.C.G.S.

sec. 160A-314,[1] et seq. and the case law of North Carolina. The trial court awarded plaintiff compensatory damages in the amount of $947,813.27, "representing the total of monthly overpayments paid by [plaintiff] since February 2008, together with interest on that total from the date of the filing of this action." The trial court did not rule on plaintiff's claims based on the North Carolina Constitution, and it denied plaintiff's request for injunctive relief. Both plaintiff and defendant appeal.

## II. Analysis

"It is well settled that when the trial court sits without a jury, the standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether the conclusions of law were proper in light of such facts. A trial court's conclusions of law, however, are reviewable *de novo*." *Anthony Marano Co. v. Jones*, 165 N.C. App. 266, 267–68, 598 S.E.2d 393, 395 (2004) (citations omitted).

At the outset, defendant claims that the trial court erred in concluding as a matter of law that plaintiff's complaint is not barred by the statute of limitations. Defendant argues that the three-year statute of limitations in N.C. Gen. Stat. § 1-

---

[1] N.C. Gen. Stat. § 160A-314(a) (2015) states, "A city may establish and revise from time to time schedules of rents, rates, fees, charges, and penalties for the use of or the services furnished by any public enterprise." Moreover, "Schedules of rents, rates, fees, charges, and penalties may vary according to classes of service, and different schedules may be adopted for services provided outside the corporate limits of the city." *Id.*

52(2) and (5) (2009) began to run immediately after the June 2002 reclassification took effect, and because plaintiff did not file suit until 9 February 2011, plaintiff's complaint is time-barred.

Plaintiff argues that the continuing wrong doctrine applies and that "[t]he limitations period for [its] claims was not triggered by the Council's June 2002 decision to change billing practices for Tryon Estates. That limitations period was triggered only when [defendant] *injured* [plaintiff] by repeatedly sending bills that overcharged for water and sewer." Thus, plaintiff claims that "[e]ach illegal bill was a separate wrong that triggered its own limitations period."

In North Carolina, "[o]nce a defendant raises a statute of limitations defense, the burden of showing that the action was instituted within the prescribed period is on the plaintiff. A plaintiff sustains this burden by showing that the relevant statute of limitations has not expired." *Horton v. Carolina Medicorp, Inc.*, 344 N.C. 133, 136, 472 S.E.2d 778, 780 (1996) (citations omitted). The parties do not contest that a three-year statute of limitations applies to plaintiff's claims, but they disagree as to when plaintiff's claims accrued.

"A cause of action generally accrues and the statute of limitations begins to run as soon as the right to institute and maintain a suit arises." *Penley v. Penley*, 314 N.C. 1, 20, 332 S.E.2d 51, 62 (1985) (citations omitted); *see also* N.C. Gen. Stat. § 1-15(a) (2015). Our courts have accepted the "continuing wrong" or "continuing

violation" doctrine as an exception to that general rule. *Williams v. Blue Cross Blue Shield of N.C.*, 357 N.C. 170, 179, 581 S.E.2d 415, 423 (2003) (citing *Faulkenbury v. Teachers' & State Employees' Ret. Sys.* (*Faulkenbury II*), 345 N.C. 683, 694–95, 483 S.E.2d 422, 429–30 (1997)). In order for the doctrine to apply, there must be a continuing violation, which "is occasioned by continual unlawful acts, not by continual ill effects from an original violation." *Id.* (quoting *Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir. 1981)) (quotations omitted). This Court, however, has "acknowledge[d] that the distinction between on-going violations and continuing effects of an initial violation is subtle[.]" *Faulkenbury v. Teachers' & State Employees' Ret. Sys.* (*Faulkenbury I*), 108 N.C. App. 357, 369, 424 S.E.2d 420, 425 (holding that the plaintiffs were suffering from the continuing effects of the defendants' original action of amending the statute),[2] *aff'd per curiam*, 335 N.C. 158, 436 S.E.2d 821 (1993).

To determine whether plaintiff is suffering from a continuing violation, we consider "the policies of the statute of limitations and the nature of the wrongful conduct and the harm alleged." *Id.* at 368, 424 S.E.2d at 425 (citing *Cooper v. United States*, 442 F.2d 908, 912 (7th Cir. 1971)). " '[I]f the same alleged violation was committed at the time of each act, then the limitations period begins anew with each

---

[2] See *Liptrap v. City of High Point*, 128 N.C. App. 353, 358–61, 496 S.E.2d 817, 820–22 (1998), for a thorough analysis on the history of *Faulkenbury I* and *Faulkenbury II* and the continuing wrong doctrine.

violation . . . .' " *Williams*, 357 N.C. at 179–80, 581 S.E.2d at 423 (quoting *Perez v. Laredo Junior Coll.*, 706 F.2d 731, 733 (5th Cir. 1983)).

Here, the trial court did not specifically rely on the continuing wrong doctrine but appears to have applied it. Regarding the statute of limitations, the trial court concluded as a matter of law the following:

> For purposes of the applicable statute of limitations asserted by [defendant] herein, each monthly invoice presented by [defendant] to [plaintiff] since [defendant's] June 2002 reclassification and billing methodology change was an additional independent wrongful act committed by [defendant]. The three-year statute of limitations applies and does not act to bar the claims for relief of [plaintiff] herein. However, [plaintiff] may only recover damages against [defendant] for overcharges asserted by [plaintiff], and paid by [plaintiff] under [defendant's] June 2002 reclassification and changes in billing methodology, for that period of time beginning three years before the date upon which [plaintiff] filed the Complaint in this action.

Before we analyze whether the continuing wrong doctrine applies, we must first determine when plaintiff's cause of action accrued. Under the general rule regarding the statute of limitations stated above, plaintiff's cause of action accrued on 1 July 2002 when the reclassification took effect and plaintiff had the right to institute and maintain a suit. *See Penley,* 314 N.C. at 20, 332 S.E.2d at 62. Accordingly, based on the three-year statute of limitations, plaintiff would have had to file suit prior to 1 July 2005.

On appeal, plaintiff argues, consistent with the trial court's conclusion, that

each monthly bill was a "separate wrong," and based on the continuing wrong doctrine, plaintiff's February 2011 complaint is not time-barred.

In determining if the continuing wrong doctrine applies, we consider "the policies of the statute of limitations and the nature of the wrongful conduct and the harm alleged." *Faulkenbury I,* 108 N.C. App. at 368, 424 S.E.2d at 425. Our Supreme Court has stated, "Statutes of limitation are intended to afford security against stale claims." *Estrada v. Burnham,* 316 N.C. 318, 327, 341 S.E.2d 538, 544 (1986), *superseded by statute on other grounds as stated in Turner v. Duke Univ.,* 325 N.C. 152, 381 S.E.2d 706 (1989). "With the passage of time, memories fade or fail altogether, witnesses die or move away, evidence is lost or destroyed; and it is for these reasons, and others, that statutes of limitations are inflexible and unyielding and operate without regard to the merits of a cause of action." *Id.*

While plaintiff submits a number of cases on the continuing wrong doctrine and a series of hypotheticals indicating that the statute of limitations defense cannot "grandfather repeated wrongdoing," we agree with defendant that plaintiff has mischaracterized its own claims to attempt to avoid the statute of limitations. On appeal, plaintiff argues that defendant had a continuing legal duty to comply with N.C. Gen. Stat. § 160A-314, which grants a city the authority to establish and revise "schedules of rates," and each monthly bill violated that duty. Yet, the actual wrongdoing of which plaintiff complained was defendant's decision to reclassify two

water meters at Tryon Estates from commercial to residential, which occurred in June 2002.

Moreover, as stated throughout the trial court's judgment, the relief granted "invalidat[ed]" the June 2002 reclassification. In relevant part, the trial court made the following conclusions of law:

> 3. [Defendant's] June 2002 reclassification of two of [plaintiff's] meters and [defendant's] concurrent changes in its billing methodology . . . unreasonably discriminate against [plaintiff], which ultimately result in overcharging of [plaintiff] each month . . . .
>
> 4. Likewise, just as [defendant's] June 2002 reclassification of two of [plaintiff's] meters and [defendant's] concurrent changes in its billing methodology . . . is unreasonably discriminatory in its effects on [plaintiff,] these actions by [defendant] were arbitrary, capricious, [and] unreasonable . . . .
>
> 5. As a result, [plaintiff] has been overbilled and has overpaid each billing period, for water and sewer services since [defendant] implemented its June 2002 reclassification and concurrent changes in billing methodology, as described herein.
>
> . . . .
>
> 13. [Plaintiff] is entitled to recover the amount of overpayments it has paid each month as a result of [defendant's] reclassifications . . . .
>
> 14. [Plaintiff] has carried its burden of proof in showing that [defendant] has acted arbitrarily, capriciously, and unreasonably in its June 2002 reclassifications and the changes in its monthly billing methodology and the implementations thereof; as well as showing that the same

> was, in its effect as to [plaintiff], unreasonably discriminatory; as well as showing its damages.

In sum, the trial court concluded that the reclassification and change in billing was unlawful. The overcharges were resulting damages. Such a conclusion, however, is inconsistent with our application of the continuing wrong doctrine.

We conclude that there was not a continuing violation, "occasioned by continual unlawful acts," but rather only "continual ill effects from an original violation." *Williams*, 357 N.C. at 179–80, 581 S.E.2d at 423. The only alleged unlawful act was the June 2002 reclassification. The higher monthly bills constituted the continual ill effects from that reclassification. The Town Council did not reclassify the water meters at Tryon Estates as residential or commercial each month. Because the same alleged violation was not committed each month, the limitations period cannot begin anew. *See id.* at 179, 581 S.E.2d at 423.

Plaintiff waited over eight-and-a-half years to challenge the Town Council's decision to reclassify two meters at Tryon Estates. Since the June 2002 decision, three new town managers have served, there were four changes to the Town Council, and plaintiff had paid over one hundred monthly bills. Plaintiff had the option, which it pursued, to attempt to negotiate with defendant.[3] However, plaintiff cannot now

---

[3] We note that the federal district court concluded that "[p]laintiff was given notice and a chance to be heard on the change in classification[;]" that "[d]efendant acknowledge[d] that it met and communicated with the [p]laintiff's representatives before making the reclassification[;]" and that "after the initial reclassification, the [p]laintiff repeatedly communicated with the [d]efendant to

challenge the Town Council decision by claiming that it is affected by a continuing wrong. Accordingly, we hold that the statute of limitations bars plaintiff's claims.

### III. Conclusion

Because we conclude that the statute of limitations bars plaintiff's claims, we reverse and remand the trial court's order, and we do not reach the parties' additional arguments.

REVERSED AND REMANDED.

Judges McCULLOUGH and ZACHARY concur.

---

request that the meters be reclassified as commercial." *ACTS Ret.-Life Cmtys., Inc. v. Town of Columbus*, No. 1:11CV50, 2012 WL 727033, at \*6 (W.D.N.C. Mar. 6, 2012). Plaintiff represented to the federal district court that it had "ample notice and an opportunity to be heard," as the Johnson Act only applied "if a rate order was 'made after reasonable notice and hearing.' " *Id.* (citing 28 U.S.C. § 1342).