R. KENNETH BABB, Public Administrator, CTA of the Estate of REBA BURTON
NEWTON; R. KENNETH BABB, Public Administrator, CTA of the Estate of
JERRY LEWIS NEWTON, JR.; R. KENNETH BABB, Special Trustee of the Trust
established by JERRY LEWIS NEWTON, JR., under the Will of JERRY LEWIS
NEWTON, JR., dated September 29, 1992; R. KENNETH BABB, Special Trustee of
the Trust established by JERRY LEWIS NEWTON, JR., under a certain Revocable
Trust Agreement dated September 29, 1992; and R. KENNETH BABB, Special
Trustee of the Trust established by REBA BURTON NEWTON, under a cer-
tain Revocable Trust Agreement dated September 29, 1992, Plaintiffs v. ANNE
NEWTON GRAHAM; JERRY L. NEWTON, III; JOSEPH WESLEY NEWTON; PAUL
JEFFREY NEWTON; JERRY L. NEWTON, III, Trustee under the Will of REBA
BURTON NEWTON; JERRY L. NEWTON, III, Trustee under the inter vivos Trust
of REBA BURTON NEWTON; and JERRY L. NEWTON, III, Trustee under the
Will of JERRY LEWIS NEWTON, JR., Defendants

No. COA07-848

(Filed 20 May 2008)

## 1. Judges— motion to recuse—denied—no error

In an action arising from the administration of trusts, there
was no error in the trial court's denial of a motion to recuse based
on previous removal of the trustee.

## 2. Fraud— constructive—administration of trusts—directed verdict

The trial court did not err by entering a directed verdict for
plaintiffs and cross-claimants on claims for breach of fiduciary
duty and constructive fraud where the trusts in issue required
appellant trustee to make distributions, appellant sought to
obtain payment for the provision of services unrelated to the
trusts before he made distributions under the trusts, and he con-
tinued to receive fees while refusing to make distributions. Even
if appellant increased the value of the assets of the trusts, that
fact is irrelevant to the determination of whether appellant failed
to distribute the assets to his own benefit.

## 3. Damages— directed verdict—punitive damages

In an action arising from the administration of trusts, appel-
lant's assertion that the trial court directed a verdict of liability
for punitive damages was without factual support.

## 4. Trusts— punitive damages—fraud and malice—evidence sufficient

In an action rising from the administration of trusts,
there was sufficient evidence of intent, fraud, malice and willful

and wanton conduct to submit the amount of punitive damages to the jury.

### 5. Damages— punitive—written opinion not issued

The trial court did not err by failing to issue a written opinion about the reasons for a punitive damages award where the award did not exceed the allowable limit. N.C.G.S. §§ 1D-25(b), 1D-50.

### 6. Trusts— distribution not made—written objections to accountings not made

Claims relating to the administration of trusts were not barred by provisions of the trusts concerning written objections to yearly accountings. The trusts clearly required distribution of the assets, appellant refused to do so, and nothing in the cited provisions caused cross-claimants to waive their right to distribution of the assets.

### 7. Trusts— constructive fraud—statute of limitations—continuing wrong doctrine

Claims arising from the administration of trusts were not barred by the three-year statute of limitations. A claim of constructive fraud based upon a breach of fiduciary duty falls under the ten-year statute of limitations. Even assuming that these claims were governed by a three-year statute of limitations, appellant refused to make distributions required by the trusts, and the claims are saved by the continuing wrong doctrine.

### 8. Discovery— plaintiff testifying as expert and offering exhibits—called by cross-claimant

The trial court did not err in an action arising from the administration of trusts by allowing plaintiff Babb to offer exhibits and testify as an expert. Although appellant argues that this was inconsistent with Babb's answer to interrogatories and his response to requests for production of documents, Babb deferred to cross-claimants for the presentation of the evidence, and the cross-claimants then called Babb as an expert. The cross-claimants were not served with discovery requests about the expert witnesses they intended to call.

### 9. Trials— deferral of evidence—discretion of court

The trial court did not abuse its discretion by allowing a plaintiff to defer presentation of evidence until the cross-claimants had presented their evidence. A trial court has broad

authority to structure the trial logically and to set the order of proof.

**10. Trusts— constructive fraud—directed verdict—affirmative defenses irrelevant**

.The trial court did not err by granting a directed verdict on claims arising from constructive fraud in an action arising from the administration of trusts. Although appellant contended that he was prevented from offering certain affirmative defenses, those defenses were irrelevant to the claims for constructive fraud based upon a breach of fiduciary duty.

**11. Trusts— removal of trustee—separate action—award of attorney fees—recovery of commissions**

The trial court did not err by awarding to cross-claimants attorney fees that were incurred in separate proceedings for removal of appellant as trustee, and the recovery of trustee commissions. Although appellant argues that these matters should have been dealt with in separate removal proceedings, the removal proceedings were confined to removal and did not involve damages or costs; the award of damages and costs in this action was designed to restore the trust to the position it would have occupied had no breach occurred.

**12. Pleadings— amendment—no abuse of discretion**

The trial court did not abuse its discretion in an action arising from the administration of trusts by allowing amendment of plaintiffs' complaint and the cross-claims.

**13. Costs— determination of amount after notice of appeal— jurisdiction retained by trial court**

The trial court retained jurisdiction to tax costs after notice of appeal was filed from a directed verdict order and judgment. The parties were aware that the court had ordered that costs be taxed against appellant and that the trial court would thereafter specifically determine the amount of the costs.

**14. Judgments— money judgment not stayed—required deposits with clerk not made**

The trial court did not err by failing to order a stay of execution on a money judgment where appellant did not satisfy the statutory requirements by making the requisite deposit with the clerk.

BABB v. GRAHAM

[190 N.C. App. 463 (2008)]

Appeal by Defendant Jerry L. Newton, III from order entered 10 October 2006, from order and judgment entered 29 December 2006, and from orders entered 22 January 2007, 22 March 2007, and 17 May 2007 by Judge Michael E. Helms in Superior Court, Forsyth County. Heard in the Court of Appeals 19 February 2008.

*R. Kenneth Babb for Plaintiffs-Appellees; Bennett & Guthrie, P.L.L.C., by Richard V. Bennett and Roberta B. King, for Defendant-Appellee Anne Graham Newton; Wilson & Coffey, LLP, by G. Gray Wilson, J. Chad Bomar, and Stuart H. Russell, for Defendant-Appellee Joseph Wesley Newton; and Bailey & Thomas, P.A., by Wesley Bailey, for Defendant-Appellee Paul Jeffrey Newton.*

*Stephen E. Lawing for Defendant-Appellant Jerry L. Newton, III.*

McGEE, Judge.

Defendant Jerry L. Newton, III appeals from orders and judgment of the trial court. For the reasons set forth below, we affirm.

R. Kenneth Babb, as Public Administrator, CTA of the Estate of Reba Burton Newton and as Public Administrator, CTA of the Estate of Jerry Lewis Newton, Jr. (Plaintiffs) filed a complaint for declaratory judgment on 18 February 2002 against Anne Newton Graham; Jerry L. Newton, III; Joseph Wesley Newton; Paul Jeffrey Newton; Jerry L. Newton, III, as Trustee under the Will of Reba Burton Newton; Jerry L. Newton, III, as Trustee under the *inter vivos* trust of Reba Burton Newton; Jerry L. Newton, III, as Trustee under the Will of Jerry Lewis Newton, Jr.; and Gordon W. Jenkins. Plaintiffs alleged the following:

[P]laintiffs' and [D]efendants' rights, duties and obligations with regard to the aforementioned estates and trusts arise under and by virtue of authority of the Will of Reba Burton Newton, the Will of Jerry Lewis Newton, Jr., a Trust created by the Will of Reba Burton Newton, an inter vivos Trust created by Reba Burton Newton and a trust created by the Will of Jerry Lewis Newton, Jr. Copies of the Wills and Trusts are attached hereto, marked "Exhibit A" (Reba Burton Newton Will), "Exhibit B" (Jerry Lewis Newton, Jr. Will), "Exhibit C" (Reba Burton Newton inter vivos Trust dated September 29, 1992) and "Exhibit D" (Jerry Lewis Newton, Jr. inter vivos Trust dated September 29, 1992) and incorporated by reference as if fully set out herein.

We hereinafter refer to the above-listed trusts collectively as "the trusts." Plaintiffs alleged that Anne Newton Graham, Jerry L. Newton, III, Joseph Wesley Newton, and Paul Jeffrey Newton were beneficiaries of the estates of their parents, Reba Burton Newton and Jerry Lewis Newton, Jr., and were beneficiaries of the trusts created by their parents. Plaintiffs alleged several claims seeking to resolve all issues related to the administration of the trusts. Plaintiffs filed an amendment to their complaint on 3 October 2002.

Jerry L. Newton, III filed a motion for a more definite statement and a motion to dismiss dated 4 October 2002. Paul Jeffrey Newton and Anne Newton Graham filed an answer and cross-claim against Jerry L. Newton, III on 18 November 2002 and 9 December 2002, respectively. Joseph Wesley Newton filed an answer on 8 January 2003. Jerry L. Newton, III filed a response to the answer and cross-claim of Paul Jeffrey Newton and of Anne Newton Graham, along with a motion to dismiss those cross-claims, on 14 January 2003 and 4 February 2003, respectively. Jerry L. Newton, III also filed cross-claims against Paul Jeffrey Newton and Anne Newton Graham, to which they responded on 18 February 2003 and 11 March 2003, respectively.

Plaintiffs filed a motion for partial summary judgment on 30 January 2004, and Anne Newton Graham filed a motion for partial summary judgment on 2 February 2004. Paul Jeffrey Newton and Joseph Wesley Newton each filed a motion for partial summary judgment on 3 February 2004. The trial court granted those motions in an order entered 8 March 2004. Jerry L. Newton III, individually, and as trustee of the Jerry L. Newton, Jr. trust, appealed and our Court affirmed the trial court's order. *See Babb v. Graham*, 171 N.C. App. 364, 615 S.E.2d 434 (unpublished), *disc. review denied*, 360 N.C. 174, 625 S.E.2d 781 (2005).

In separate proceedings, the trial court removed Jerry L. Newton, III as trustee of the trusts, and our Court affirmed his removal. *See In re Estate of Newton*, 173 N.C. App. 530, 619 S.E.2d 571, *disc. review denied*, 360 N.C. 176, 625 S.E.2d 786 (2005). R. Kenneth Babb was appointed as trustee of the trusts on 3 June 2004.

R. Kenneth Babb, as trustee of the trusts, filed an amended complaint in the present case on 23 June 2006. Anne Newton Graham, Joseph Wesley Newton, and Paul Jeffrey Newton gave written consent to the filing of the amended complaint on 22 June 2006. The amended complaint, like Plaintiffs' original complaint, sought to

determine the rights, duties, and obligations of the parties regarding the trusts. Plaintiffs alleged in their amended complaint that Jerry L. Newton, III, as trustee of the trusts, had failed to distribute the assets of the trusts to Anne Newton Graham, Jerry L. Newton, III, Joseph Wesley Newton, and Paul Jeffrey Newton, notwithstanding the provisions of the trusts that required distribution upon the death of Reba Burton Newton.

Jerry L. Newton, III filed an answer to Plaintiffs' amended complaint on 25 August 2006 and raised several defenses and asserted a counterclaim. Anne Newton Graham filed an answer to Plaintiffs' amended complaint on 29 August 2006. She asserted cross-claims against Jerry L. Newton, III for breach of fiduciary duty, constructive fraud, an accounting, and punitive damages. Joseph Wesley Newton filed an answer to Plaintiffs' amended complaint on 29 August 2006. He asserted cross-claims against Jerry L. Newton, III for breach of fiduciary duty, unfair and deceptive trade practices, an accounting, and punitive damages. Paul Jeffrey Newton filed an answer to Plaintiffs' amended complaint on 11 September 2006. He asserted cross-claims against Jerry L. Newton, III for breach of fiduciary duty, an accounting, and punitive damages.

Jerry L. Newton, III filed a motion for the recusal of Superior Court Judge Michael E. Helms on 25 September 2006, which was denied on 10 October 2006. Plaintiffs filed a notice of voluntary dismissal, without prejudice, of several of their claims on 6 October 2006. Joseph Wesley Newton filed an answer and amended cross-claim on 10 October 2006. He alleged cross-claims against Jerry L. Newton, III for breach of fiduciary duty, constructive fraud, unfair and deceptive trade practices, an accounting, and punitive damages. Jerry L. Newton, III filed answers to the cross-claims of Anne Newton Graham, Joseph Wesley Newton, and Paul Jeffrey Newton on 2 November 2006.

At trial, Plaintiffs, along with Anne Newton Graham, Joseph Wesley Newton, and Paul Jeffrey Newton (hereinafter Cross-Claimants) moved for directed verdict at the close of the presentation of their evidence, and the trial court,

> after viewing the evidence, which included the testimony of Jerry Newton, III, in the light most favorable to . . . Jerry L. Newton, III, finds as a matter of law, Jerry L. Newton, III breached his fiduciary duty to [C]ross-[C]laimants and committed constructive fraud while failing to distribute the proceeds of the . . . trusts[.]

Accordingly, the trial court granted the motions for directed verdict and determined the following:

Plaintiffs are entitled to recover $60,435 for trustee commissions paid to Jerry L. Newton, III from 1993-2003 and the [trial court] finds that these amounts may be deducted directly from Jerry L. Newton, III's share of the three trusts, to the extent of funds available. The [trial court] determines that the [C]ross-[C]laimants, . . . Anne Newton Graham, Joseph Wesley Newton and Paul Jeffrey Newton are entitled to recover attorneys' fees incurred in the proceeding to remove Jerry L. Newton, III as trustee of the . . . trusts due to the breach of fiduciary duty and constructive fraud of Jerry L. Newton, III. Specifically, Anne Newton Graham is entitled to recover $55,604.89, Paul Jeffrey Newton is entitled to recover $55,000.00 and Joseph Wesley Newton is entitled to recover $52,722.50, and the [trial court] finds that these amounts may be deducted directly from Jerry L. Newton, III's share of the . . . trusts, to the extent of funds available[.]

The trial court also granted Plaintiffs' motion for directed verdict as to Jerry L. Newton, III's counterclaim.

The trial court submitted the remaining issues to a jury, and the jury determined the following issues, on which the trial court entered judgment:

1. What amount is . . . Plaintiff [R.] Kenneth Babb, as Trustee, entitled to recover on behalf of the . . . trusts for breach of fiduciary duty and/or constructive fraud?

ANSWER: $34,507

2. What amount of damages are . . . [C]ross-[C]laimants, Anne Newton Graham, Joseph Wesley Newton and Paul Jeff[rey] Newton entitled to recover for breach of fiduciary duty and/or constructive fraud?

AMOUNT: $52,378

3. Is Jerry L. Newton, III liable to . . . [C]ross-[C]laimants[] Anne Newton Graham, Joseph Wesley Newton and Paul Jeff[rey] Newton for punitive damages?

ANSWER: Yes

If you answer issue #3 "yes", then answer issue #4. If you answer issue #3 "no", then your deliberations are concluded.

4. What amount of punitive damages, if any, does the jury in its discretion award to [C]ross-[C]laimants[] Anne Newton Graham, Joseph Wesley Newton and Paul Jeff[rey] Newton?

AMOUNT: $500,000

The trial court ordered the following:

It is therefore hereby ORDERED, ADJUDGED and DECREED that . . . Plaintiffs have and recover $94,942.00 from Jerry L. Newton III, and . . . [C]ross-[C]laimants have and recover $715,705.39 from Jerry L. Newton, III, for a total of $810,467.96. Further, interest shall be calculated at 8% per annum from February 18, 2002 on all amounts awarded to Plaintiffs and from October 10, 2006 on all non-punitive amounts awarded to [C]ross-[C]laimants. Further, the costs of this action shall be taxed against Jerry L. Newton, III[.]

The trial court entered an order on 22 January 2007 granting relief from a clerical mistake to amend the total amount owed to Plaintiffs and Cross-Claimants from $810,467.96 to $810,647.39.

Jerry L. Newton, III filed notice of appeal on 25 January 2007 from the order denying his motion for recusal entered 10 October 2006, from the directed verdict order and judgment entered 29 December 2006, and from the order granting relief from a clerical mistake entered 22 January 2007. Jerry L. Newton, III also filed an "undertaking to stay execution on money judgment" on 25 January 2007, and deposited the amount of $810,647.39 with the trial court. Plaintiffs and Cross-Claimants filed a motion to tax costs dated 15 February 2007, seeking "an Order for the payment of costs, including reasonable attorneys' fees, in this action, against Jerry L. Newton, III." Jerry L. Newton, III filed a *pro se* response to the motion to tax costs dated 22 February 2007, seeking to have the motion dismissed. Plaintiffs and Cross-Claimants filed a supplement to their motion to tax costs on 26 February 2007.

Following a hearing, the trial court entered an interim order on the motion to tax costs on 22 March 2007. The trial court ruled as follows:

(1) The Motion to Tax Costs is properly before [the trial court] and [the trial court] has jurisdiction to hear said Motion. Execution on the money judgment in this case is not stayed because Jerry L. Newton, III has not fully complied with N.C.G.S.

§ 1-289, N.C.G.S. § 1-293, and Rule 62 of the North Carolina Rules of Civil Procedure and the Motion to Tax Costs is not stayed under N.C.G.S. § 1-294;

(2) N.C.G.S. § 6-21(2) applies to the present action and allows [the trial court] to award costs in its discretion, including reasonable attorney's fees;

(3) [The trial court] further finds that N.C.G.S. § 7A-305 and N.C.G.S. § 7A-314 are applicable to the present case and allow [the trial court], in its discretion, to award as costs fees for expert witnesses;

([4]) The February 28, 2007 hearing is adjourned and will reconvene on April 17, 2007 for the purpose of the [trial court's] consideration of the reasonableness of attorney's fees and other costs sought by . . . Defendants and Cross-Claimants and . . . Plaintiffs; and

([5]) On or before April 6, 2007 counsel for the parties shall serve on all other parties, any and all affidavits or other documents which they desire the [trial court] to consider at the hearing on April 17, 2007.

Jerry L. Newton, III filed a response to the motion to tax costs and to the interim order on 12 April 2007. He then filed a notice of appeal on 24 April 2007 from the interim order entered 22 March 2007 and from the final order on the motion to tax costs entered in open court on 17 April 2007. The trial court entered a written order on the motion to tax costs on 17 May 2007, ruling that "the costs set forth herein in the amount of $388,664.54, plus pre-judgment interest as set forth in the Directed Verdict Order and judgment filed on December 29, 2006, are hereby taxed against . . . Jerry L. Newton, III." On 16 June 2007, Jerry L. Newton, III filed notice of appeal from the final order entered in open court on 17 April 2007 and from the order on the motion to tax costs filed 17 May 2007.

I.

[1] Jerry L. Newton, III (hereinafter Appellant) first argues the trial court erred by denying his motion for recusal. Appellant contends that the trial court's impartiality could reasonably be questioned because the trial court, in separate proceedings, had removed Appellant as trustee of the trusts at issue in the present case. Specifically, Appellant relies upon the trial court's previous finding of

fact detailing Appellant's "animosity, hostility, disloyalty, and self-interest" toward Cross-Claimants. *See In re Estate of Newton*, 173 N.C. App. at 539-40, 619 S.E.2d at 576-77. Appellant also relies upon the trial court's previous conclusion of law that Appellant had "violate[d] his fiduciary duty through default and misconduct in the execution of his office as Trustee of said Trusts[.]" *See id.* at 534, 619 S.E.2d at 573.

> " '[T]he burden is upon the party moving for disqualification to demonstrate objectively that grounds for disqualification actually exist. Such a showing must consist of substantial evidence that there exists such a personal bias, prejudice or interest on the part of the judge that he would be unable to rule impartially.' "

*Lange v. Lange*, 357 N.C. 645, 649, 588 S.E.2d 877, 880 (2003) (citations omitted). "Thus, the standard is whether 'grounds for disqualification actually exist.' " *Id.*

Our Court has made clear that "knowledge of evidentiary facts gained by a trial judge from an earlier proceeding does not require disqualification." *In re Faircloth*, 153 N.C. App. 565, 570, 571 S.E.2d 65, 69 (2002). In *Faircloth*, the respondent in a termination of parental rights proceeding argued that the trial judge erred by refusing to recuse himself from the termination proceeding. *Id.* at 569, 571 S.E.2d at 68. The trial judge had previously presided over a "hearing on allegations that the four children were abused and neglected" and the trial judge had previously adjudicated the four children abused and neglected. *Id.* However, on appeal our Court reversed the abuse and neglect adjudication on the ground that "the trial court applied an erroneous legal standard in denying [the respondent's] request to call three of the children as witnesses." *Id.* (citing *In re Faircloth*, 137 N.C. App. 311, 318, 527 S.E.2d 679, 684 (2000)). Therefore, the respondent argued that the trial judge in the termination proceeding "was biased and could not be impartial because he heard evidence against [the respondent] in the previous abuse and neglect proceeding without hearing from the three children [the respondent] sought to call as witnesses." *Id.* at 569, 571 S.E.2d at 68-69.

Our Court rejected the respondent's argument, recognizing that "knowledge of evidentiary facts gained by a trial judge from an earlier proceeding does not require disqualification." *Id.* at 570, 571 S.E.2d at 69. Our Court also rejected "any contention that [the trial judge] should be disqualified because he earlier adjudicated the four children abused and neglected." *Id.* at 570-71, 571 S.E.2d at 69.

Similarly, Appellant argues that the trial judge should have been disqualified because of his rulings in the previous case. In the present case, as in *Faircloth*, we reject the contention that the trial judge should have been disqualified simply because he had previously ordered that Appellant be removed as trustee of the trusts. *See id.* We hold the trial court did not err by denying Appellant's motion for recusal.

## II.

[2] Appellant next argues the trial court erred by entering a directed verdict for Plaintiffs and Cross-Claimants on their claims for breach of fiduciary duty and constructive fraud. We disagree.

> When considering a motion for a directed verdict, a trial court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of every reasonable inference arising from the evidence. Any conflicts and inconsistencies in the evidence must be resolved in favor of the non-moving party. If there is more than a scintilla of evidence supporting each element of the non-moving party's claim, the motion for a directed verdict should be denied.

*Jernigan v. Herring*, 179 N.C. App. 390, 392-93, 633 S.E.2d 874, 876-77 (2006) (citations omitted), *disc. review denied*, 361 N.C. 355, 645 S.E.2d 770 (2007). Our Supreme Court has recognized that while rare, it is proper to direct a verdict for the party with the burden of proof "if the evidence so clearly establishes the fact in issue that no reasonable inferences to the contrary can be drawn." *Bank v. Burnette*, 297 N.C. 524, 536, 256 S.E.2d 388, 395 (1979). The Court also stressed that "there are neither constitutional nor procedural impediments to directing a verdict for the party with the burden of proof where *the credibility of movant's evidence is manifest as a matter of law*." *Id.* at 537, 256 S.E.2d at 396. Although there is no general rule to determine when credibility is manifest, our Supreme Court has recognized that credibility is manifest in the following three situations:

> (1) Where non-movant establishes proponent's case by admitting the truth of the basic facts upon which the claim of proponent rests.

> (2) Where the controlling evidence is documentary and non-movant does not deny the authenticity or correctness of the documents.

(3) Where there are only latent doubts as to the credibility of oral testimony and the opposing party has "failed to point to specific areas of impeachment and contradictions."

*Id.* at 537-38, 256 S.E.2d at 396 (citations omitted).

In order to maintain a claim for constructive fraud, [the] plaintiffs must show that they and [the] defendants were in a "relation of trust and confidence . . . [which] led up to and surrounded the consummation of the transaction in which [the] defendant[s] [are] alleged to have taken advantage of [their] position of trust to the hurt of [the] plaintiff[s]."

*Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 666, 488 S.E.2d 215, 224 (1997) (quoting *Rhodes v. Jones*, 232 N.C. 547, 549, 61 S.E.2d 725, 726 (1950)). "Implicit in the requirement that a defendant '[take] advantage of his position of trust to the hurt of [the] plaintiff' is the notion that the defendant must seek his own advantage in the transaction; that is, the defendant must seek to benefit himself." *Id.*

In *Compton v. Kirby*, 157 N.C. App. 1, 577 S.E.2d 905 (2003), our Court held that the trial court properly submitted the issue of breach of fiduciary duty to the jury because the plaintiffs presented evidence in support of their allegation. *Id.* at 15, 577 S.E.2d at 914. Our Court also recognized that "a breach of fiduciary duty amounts to constructive fraud." *Id.* at 16, 577 S.E.2d at 914. Accordingly, because we held that the "plaintiffs established the existence of a fiduciary duty and a breach of that duty, we likewise conclude[d] the issue of constructive fraud was properly submitted to the jury." *Id.* at 16, 577 S.E.2d at 915.

Appellant argues the trial court erred by entering a directed verdict because there was insufficient evidence that he sought to benefit himself by failing to distribute trust assets. We disagree. Appellant cites *Toomer v. Branch Banking & Tr. Co.*, 171 N.C. App. 58, 614 S.E.2d 328, *disc. review denied*, 360 N.C. 78, 623 S.E.2d 263 (2005), where our Court held that the plaintiffs had failed to state a claim for constructive fraud because they failed to allege that the defendant's successor in interest sought to benefit itself. *Id.* at 68, 614 S.E.2d at 336.

In contrast to *Toomer*, Plaintiffs and Cross-Claimants in the present case presented sufficient evidence of constructive fraud. Based on Appellant's own testimony, the credibility of which is manifest, *see Bank*, 297 N.C. at 537, 256 S.E.2d at 396, Plaintiffs and Cross-Claimants demonstrated that Appellant, by his refusal to distribute

trust assets, sought to benefit himself. Appellant testified that he refused to make distributions to the trust beneficiaries until he was paid for work he had done on his father's estate and until the accountings in his father's estate had been approved. However, Appellant admitted that his father's estate was a separate entity from the trusts. This evidence shows that Appellant sought to benefit himself by obtaining payment for the provision of services unrelated to the trusts before he made distributions under the trusts. Appellant also testified that he refused to make distributions to the trust beneficiaries until all litigation had been resolved, but acknowledged that the only litigation pending from June 1999 until 2002 was the action to remove Appellant as trustee. Appellant further testified that he failed to distribute trust assets to the trust beneficiaries because he believed that the trusts did not allow him to make partial distributions. However, Appellant admitted that he did not seek legal advice as to whether he could make a partial distribution under the trusts.

Moreover, the plain language of the trusts required distribution of the trust assets upon the death of Reba Burton Newton. The will of Jerry Lewis Newton, Jr. provided:

> If my wife, REBA BURTON NEWTON, shall survive me, then my Executor shall distribute the balance of my residuary estate to my Trustee to be held, administered and distributed in trust in accordance with the following provisions:
>
> . . .
>
> 6. Upon the death of my wife, the remaining principal of this Trust shall be divided into equal separate shares so as to provide one share for each of my then living children . . . . The share provided for a living child of mine shall be distributed to such child.

The Jerry Lewis Newton, Jr. *inter vivos* trust provided that the trust assets should go to Reba Burton Newton should she survive Jerry Lewis Newton, Jr., and then, if not otherwise disposed of by Reba Burton Newton, the trust assets would be distributed at her death as follows:

> The balance of the principal of this Trust or all of the principal of this Trust, if no amount is distributed under subparagraph (1) shall be divided into equal separate shares so as to provide one share for each of my then living children . . . . The share provided for a living child of mine shall be distributed to such child.

Finally, the Reba Burton Newton *inter vivos* trust provided:

> Upon [Reba Burton Newton's] death, the Trustee shall divide this Trust as then constituted into equal separate shares so as to provide one share for each then living child of [Reba Burton Newton] . . . . The share provided for a living child of [Reba Burton Newton] shall be distributed to such child.

These trusts, the credibility of which is manifest, *see Bank*, 297 N.C. at 537, 256 S.E.2d at 396, required Appellant to make distributions to the trust beneficiaries upon the death of Reba Burton Newton. However, as Appellant testified, he refused to do so for reasons entirely unrelated to the trusts. Moreover, Appellant continued to receive trustee fees during the period of time in which he served as trustee and, therefore, benefitted from his failure to distribute the trust assets. We hold that the above-cited evidence warranted the entry of a directed verdict for Plaintiffs and Cross-Claimants on their claims for breach of fiduciary duty and constructive fraud. Accordingly, the trial court did not err.

Appellant also argues the trial court erred by directing a verdict because Appellant increased the value of the assets of the trusts. However, even if Appellant did so, that fact is irrelevant to the determination of whether Appellant failed to distribute the assets of the trusts for his own benefit.

In conjunction with the arguments already addressed in this section, Appellant also argues the trial court erred by "failing to instruct the jury that damages for breach of trust are such as to restore [the] trust to [the] position [the trust would have been in] had the breach of trust not occurred." However, despite Appellant's contention, the trial judge did instruct the jury as follows: "I instruct you that damages for breach of trust are designed to restore the trust to the same position it would have been in had no breach occurred." Therefore, Appellant's argument is without merit.

III.

[3] Appellant next makes several arguments related to the award of punitive damages. Pursuant to N.C. Gen. Stat. § 1D-15(a) (2007), punitive damages may be awarded "if the claimant proves that the defendant is liable for compensatory damages and that one of the following aggravating factors was present and was related to the injury for which compensatory damages were awarded: (1) Fraud. (2) Malice. (3) Willful or wanton conduct." Our Court has recognized that "[s]o

long as there is 'some fact or circumstance' in evidence from which one of these elements may be inferred, the question of punitive damages is for the jury and not for the court." *Ingle v. Allen*, 69 N.C. App. 192, 198, 317 S.E.2d 1, 4 (citation omitted), *disc. review denied*, 311 N.C. 757, 321 S.E.2d 135 (1984). N.C. Gen. Stat. § 1D-5(4) (2007) provides: " 'Fraud' does not include constructive fraud unless an element of intent is present."

Appellant argues as follows:

> The trial court committed reversible error in directing verdict of liability for punitive damages, and in submitting the issue of the amount of punitive damages, when there was conflicting evidence sufficient to go to the jury, including conflicting evidence as to the intent of [Appellant], as required by [N.C.G.S.] § 1D-5(4), in failing to distribute the proceeds of trusts, which creates a question for the Jury.

Appellant's assertion that the trial court directed a verdict of liability for punitive damages is without factual support. The trial court did not direct a verdict for Cross-Claimants on Appellant's liability for punitive damages. Rather, the trial court submitted the, following issue to the jury, which the jury answered in the affirmative: "Is Jerry L. Newton, III liable to . . . [C]ross-[C]laimants[] Anne Newton Graham, Joseph Wesley Newton and Paul Jeff[rey] Newton for punitive damages?" Therefore, this argument is without merit.

[4] We now address Appellant's argument that the trial court erred by submitting to the jury the issue of the amount of punitive damages. Appellant concedes there was sufficient evidence of intent for submission to the jury and, therefore, defeats his own argument. However, even without Appellant's concession, we hold there was sufficient evidence of intent, fraud, malice, and willful and wanton conduct by Appellant.

Appellant admitted that he refused to distribute the assets of the trusts despite the plain language of the trusts that required distribution upon the death of Reba Burton Newton. Based upon the extensive evidence recited above, Appellant admitted that he refused to make such distributions for reasons wholly unrelated to the trusts. Appellant also testified that he held his siblings in contempt and described them as "contemptuous people." Appellant admitted that he had been convicted of assault on a female for slapping his sister, Anne Newton Graham, on the day of their mother's death, and also

admitted that he had attempted to hit his brother, Paul Jeffrey Newton. Appellant further testified that "when [my siblings] are hostile toward me, yes, I am hostile toward them." All of this evidence was sufficient to establish intent, fraud, malice, and willful and wanton conduct. *See Ingle*, 69 N.C. App. at 198-99, 317 S.E.2d at 4-5 (finding sufficient evidence of, *inter alia*, malice, reckless indifference, and wilfulness where the evidence showed that the "defendants distributed more than $130,000 from the trust, contrary to the will and contrary to the advice of counsel, converting trust assets to their own use at a time when they knew the plaintiff had received no payments under the trust for a period of eight years" and where there were "accusations on the part of both [the] defendants blaming [the] plaintiff for the death of the testator."). Moreover, in *Compton*, our Court recognized that "[p]unitive damages are justified in cases of constructive fraud, N.C. Gen. Stat. § 1D-15(a)(1) (2001), as long as 'some compensatory damages have been shown with reasonable certainty.' " *Compton*, 157 N.C. App. at 21, 577 S.E.2d at 917 (quoting *Olivetti Corp. v. Ames Business Systems, Inc.*, 319 N.C. 534, 549, 356 S.E.2d 578, 587, *reh'g denied*, 320 N.C. 639, 360 S.E.2d 92 (1987)). In the present case, Cross-Claimants demonstrated compensatory damages with reasonable certainty.

**[5]** Appellant also argues that pursuant to N.C. Gen. Stat. § 1D-50, the trial court erred by failing to issue a written opinion regarding the reasons for the award of punitive damages. N.C. Gen. Stat. § 1D-50 (2007) provides as follows:

> When reviewing the evidence regarding a finding by the trier of fact concerning liability for punitive damages in accordance with G.S. 1D-15(a), or regarding the amount of punitive damages awarded, the trial court shall state in a written opinion its reasons for upholding or disturbing the finding or award. In doing so, the court shall address with specificity the evidence, or lack thereof, as it bears on the liability for or the amount of punitive damages, in light of the requirements of this Chapter.

Appellant's argument is foreclosed by *Zubaidi v. Earl L. Pickett Enters., Inc.*, 164 N.C. App. 107, 595 S.E.2d 190, *disc. review denied*, 359 N.C. 76, 605 S.E.2d 151 (2004), where our Court held:

> As the language of the statute does not require judicial review of a punitive damage award to be mandatory and we find no case law holding judicial review to be mandatory except in cases where the award exceeds the statutory limits, the trial court did

not err in failing to make specific findings of fact and failing to set aside the punitive damages awarded within statutory limits.

*Id.* at 118, 595 S.E.2d at 196. In the present case, Appellant does not contend that the amount of punitive damages exceeded the statutory limit and it is clear, based upon our review, that the award did not exceed the allowable limit. *See* N.C. Gen. Stat. § 1D-25(b) (2007) (stating that "[p]unitive damages awarded against a defendant shall not exceed three times the amount of compensatory damages or two hundred fifty thousand dollars ($250,000), whichever is greater."). Therefore, the trial court was not required to issue a written opinion regarding the award of punitive damages. *See Zubaidi*, 164 N.C. App. at 118, 595 S.E.2d at 196.

## IV.

[6] Appellant next argues that the claims of Plaintiffs and Cross-Claimants were barred by the express provisions of two of the trusts because Cross-Claimants did not issue written objections to Appellant's yearly accountings. The trust provisions of Reba Burton Newton's last will and testament provided as follows:

The Trustee shall render annual accounts of disbursements, income and principal to each beneficiary, designated and contingent, who is not under a legal disability and to the legal guardian of each beneficiary who is under a legal disability. The written approval of a beneficiary or his guardian shall be binding upon the beneficiary as to all matters and transactions covered by the account. In the event a beneficiary or his guardian does not render a letter of written approval or does not raise an objection within ninety (90) days after receipt of the annual account, his written approval shall be deemed to have been made, and the account approved as of the last day of the ninety (90) day period.

The trust provisions of Jerry Lewis Newton, Jr.'s last will and testament similarly provided:

The Trustee shall render annual accounts of disbursements, income and principal to each beneficiary, designated and contingent, who is not under a legal disability and to the legal guardian of each beneficiary who is under a legal disability. The written approval of a beneficiary or his guardian shall be binding upon the beneficiary as to all matters and transactions covered by the account. In the event a beneficiary or his guardian does not render a letter of written approval or does not raise an objection

within ninety (90) days after receipt of the annual account, his written approval shall be deemed to have been made, and the account approved as of the last day of the ninety (90) day period.

Specifically, Appellant argues that because he made annual accountings and because Cross-Claimants did not render written objections to those accountings, "all matters in dispute in this action are thereby approved and binding upon all Beneficiaries, to wit, barring the claims of Cross-Claimants and Plaintiffs." We disagree.

It is well settled that " '[a] phrase should not be given a significance which clearly conflicts with the evident intent and purpose of the testator as gathered from the four corners of the instrument[.]' " *Trust Co. v. Carr*, 279 N.C. 539, 547, 184 S.E.2d 268, 273 (1971) (quoting 7 Strong's North Carolina Index 2d, Wills, § 28, pp. 598-599). In the case before us, as we discussed above, the trusts clearly required Appellant to distribute the assets upon the death of Reba Burton Newton. However, Appellant refused to do so. Although Cross-Claimants did not object to the contents of the accountings, nothing in the trust provisions cited above caused Cross-Claimants to waive their right to distribution of the assets of the trusts. Appellant's argument is without merit.

V.

**[7]** Appellant also argues that under N.C. Gen. Stat. § 1-52(1), Plaintiffs' and Cross-Claimants' breach of fiduciary duty claims were barred by the three-year statute of limitations. It is true that "[a]llegations of breach of fiduciary duty that do not rise to the level of constructive fraud are governed by the three-year statute of limitations applicable to contract actions contained in N.C. Gen. Stat. § 1-52(1) (2003)." *Toomer*, 171 N.C. App. at 66-67, 614 S.E.2d at 335. "However, '[a] claim of constructive fraud based upon a breach of fiduciary duty falls under the ten-year statute of limitations contained in N.C. Gen. Stat. § 1-56 [2003].' " *Id.* at 67, 614 S.E.2d at 335 (quoting *NationsBank of N.C. v. Parker*, 140 N.C. App. 106, 113, 535 S.E.2d 597, 602 (2000)).

The case before us involves claims for constructive fraud based upon a breach of fiduciary duty, and we have already held that the trial court did not err by granting a directed verdict for Plaintiffs and Cross-Claimants on those claims. Therefore, we hold that Plaintiffs' and Cross-Claimants' claims were not barred by the applicable ten-year statute of limitations. *See id; see also* N.C. Gen. Stat. § 1-56 (2007) (providing that "[a]n action for relief not otherwise limited by

this subchapter may not be commenced more than 10 years after the cause of action has accrued.").

Even assuming, *arguendo*, that the claims for breach of fiduciary duty were governed by a three-year statute of limitations, the breach of fiduciary duty claims were not time-barred under the continuing wrong doctrine. Our Supreme Court has recognized the continuing wrong doctrine as an exception to the general rule that a claim accrues when the right to maintain a suit arises. *Williams v. Blue Cross Blue Shield of N.C.*, 357 N.C. 170, 178-79, 581 S.E.2d 415, 423 (2003). "When this doctrine applies, a statute of limitations does not begin to run until the violative act ceases." *Id.* at 179, 581 S.E.2d at 423. Our Supreme Court also stated that " '[a] continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation.' " *Id.* (quoting *Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir. 1981)). In order to determine whether a continuing violation exists, we examine " '[t]he particular policies of the statute of limitations in question, as well as the nature of the wrongful conduct and harm alleged,' as set out in *Cooper v. United States*, 442 F.2d 908, 912 (7th Cir. 1971)." *Id.*

In the present case, Cross-Claimants alleged, and Appellant testified, that Appellant continuously refused to make distributions under the trusts until he was removed as trustee on 3 June 2004. Therefore, Appellant's wrongful conduct, the refusal to make distributions, continued until he was removed as trustee on 3 June 2004. The three-year statute of limitations would not have begun to run until 3 June 2004 and, therefore, the breach of fiduciary claims in the case before us would not have been barred.

VI.

[8] Appellant next argues that "the trial court err[ed] when [it] allowed [R. Kenneth Babb] to offer exhibits and testify as an expert, inconsistent with his answers to interrogatories and response to requests for production of documents[.]" However, R. Kenneth Babb did not answer untruthfully when he stated that he did not intend to call expert witnesses. Because of the unusual posture of this case, R. Kenneth Babb deferred to Cross-Claimants for the presentation of the evidence. Cross-Claimants then called R. Kenneth Babb as an expert witness. Appellant does not contend that the presentation of R. Kenneth Babb as an expert witness for Cross-Claimants was inconsistent with any of Cross-Claimants' discovery responses. In fact, Cross-Claimants were not served with discovery requests regarding

**BABB v. GRAHAM**

[190 N.C. App. 463 (2008)]

the expert witnesses they intended to call. We overrule this assignment of error.

## VII.

[9] Appellant next argues "the trial court err[ed] when [it] overruled objections of [Appellant] to the [trial court] allowing R. Kenneth Babb, acting as Plaintiff in this action, to defer presentation of evidence until [Cross-Claimants] had offered evidence." In support of his cursory argument, Appellant briefly cites *Whitacre P'ship v. Biosignia, Inc.*, 358 N.C. 1, 591 S.E.2d 870 (2004), for the proposition that "[d]ue process requires that persons be given a fair opportunity to litigate their legal rights." *Id.* at 36, 591 S.E.2d at 893. However, this citation is irrelevant, as the Court cited this law when examining the "the rationale for applying the privity concept in the collateral estoppel context." *Id.*

It is well settled that a trial court has broad authority to "structure the trial logically and to set the order of proof. Absent an abuse of discretion, the trial judge's decisions in these matters will not be disturbed on appeal." *In re Will of Hester*, 320 N.C. 738, 741-42, 360 S.E.2d 801, 804 (citations omitted), *reh'g denied*, 321 N.C. 300, 362 S.E.2d 780 (1987). Appellant has not demonstrated that the trial court abused its discretion, and we overrule this assignment of error.

## VIII.

[10] Appellant next argues that "the trial court err[ed] in directing verdict and entering judgment on the grounds that the directed verdict prevented [Appellant] from offering the defenses of good faith, prudent investor, and delegation of duties, by failing to charge on said defenses[.]" However, the claims for constructive fraud were based upon Appellant's refusal, for his own benefit, to make distributions under the trusts when he was required to do so. We have already held that the trial court did not err by directing a verdict for Plaintiffs and Cross-Claimants. These affirmative defenses were irrelevant to the claims for constructive fraud based upon a breach of fiduciary duty. Therefore, the trial court did not err.

## IX.

[11] Appellant next argues the trial court erred by awarding to Cross-Claimants attorney's fees that were incurred by them in the separate proceedings for removal of Appellant as trustee. Appellant also argues the trial court erred by "awarding as compensatory damages recovery of trustee commissions paid by the Trusts to

[Appellant], which should have been addressed in the separate special proceeding[.]" We disagree. N.C. Gen. Stat. § 6-21(2) (2007) provides as follows:

> Costs in the following matters shall be taxed against either party, or apportioned among the parties, in the discretion of the court:
>
> . . .
>
> (2) Caveats to wills and any action or proceeding which may require the construction of any will or trust agreement, or fix the rights and duties of parties thereunder; provided, that in any caveat proceeding under this subdivision, the court shall allow attorneys' fees for the attorneys of the caveators only if it finds that the proceeding has substantial merit.

The statute further provides that "[t]he word 'costs' as the same appears and is used in this section shall be construed to include reasonable attorneys' fees in such amounts as the court shall in its discretion determine and allow[.]" *Id.* Moreover, in *In re Trust Under Will of Jacobs*, 91 N.C. App. 138, 370 S.E.2d 860, *disc. review denied*, 323 N.C. 476, 373 S.E.2d 863 (1988), our Court recognized that "damages for breach of trust are designed to restore the trust to the same position it would have been in had no breach occurred." *Id.* at 146, 370 S.E.2d at 865. Our Court further stated that "the court may fashion its order 'to fit the nature and gravity of the breach and the consequences to the beneficiaries and trustee.' " *Id.* (quoting Bogert, The Law of Trusts and Trustees, section 543(V) (rev. 2d. ed. 1982)). Accordingly, our Court held that the trial court's "order mandating payment of costs, witness fees, and attorney's fees was a proper assessment of damages." *Id.*

In the case before us, the trial court awarded Cross-Claimants attorney's fees they incurred in the separate proceedings to remove Appellant as trustee. The trial court also awarded Plaintiffs the "trustee commissions paid to [Appellant] from 1993-2003[.]" Appellant argues that these expenses should have been dealt with in the separate removal proceedings. However, it appears that the removal proceedings were confined to the issue of whether Appellant should be removed as trustee of the trusts; Plaintiffs and Cross-Claimants did not seek damages or costs in those proceedings. *See In re Estate of Newton*, 173 N.C. App. 530, 619 S.E.2d 571, *disc. review denied*, 360 N.C. 176, 625 S.E.2d 786 (2005). Therefore, Plaintiffs and Cross-Claimants appropriately sought recovery of these expenses in the present case. We hold that the award of attorney's fees and the award

of trustee commissions were "designed to restore the trust to the same position it would have been in had no breach occurred" and that the awards " 'fit the nature and gravity of the breach and the consequences to the beneficiaries and trustee.' " *See In re Trust Under Will of Jacobs*, 91 N.C. App. at 146, 370 S.E.2d at 865 (quoting Bogert, § 543(V)). We overrule these assignments of error.

## X.

**[12]** Appellant also argues the trial court erred by allowing Plaintiffs' complaint and the cross-claims to be amended. Appellant's entire argument under this section is as follows: "Said pleadings were not proper under N.C. Gen. Stat. § 1A-1, Rule 12 and were filed without leave pursuant to N.C. Gen. Stat. § 1A-1, Rule 15(a), and should be stricken."

N.C. Gen. Stat. § 1A-1, Rule 15(a) (2007) provides that after a party has amended his pleading once as a matter of course, "a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." "Rule 15(a) contemplates liberal amendments to the pleadings, which should always be allowed unless some material prejudice is demonstrated." *Stetser v. TAP Pharm. Prods., Inc.*, 165 N.C. App. 1, 31, 598 S.E.2d 570, 590 (2004). A party objecting to the filing of an amended pleading "has the burden of satisfying the trial court that he would be prejudiced by the granting or denial of a motion to amend. The exercise of the court's discretion is not reviewable absent a clear showing of abuse thereof." *Watson v. Watson*, 49 N.C. App. 58, 60-61, 270 S.E.2d 542, 544 (1980) (citations omitted).

In the present case, Plaintiffs filed the amended complaint with the written consent of Anne Newton Graham, Paul Jeffrey Newton, and Joseph Wesley Newton. Plaintiffs also filed a motion to amend their complaint on 27 November 2006, seeking leave of court to file the amended complaint, although such motion was filed after the amended complaint. The trial court allowed the motion to amend. Appellant does not argue that he was prejudiced by the filing of the amended complaint and cross-claims. Moreover, Appellant does not argue that the trial court abused its discretion. We hold the trial court did not abuse its discretion and overrule this assignment of error.

## XI.

**[13]** Appellant argues the trial court erred by entering the interim order on the motion to tax costs on 22 March 2007 and by entering

the final order on the motion to tax costs on 17 May 2007. Appellant contends the trial court lacked jurisdiction to enter these orders because Appellant had previously filed a notice of appeal from the trial court's earlier directed verdict order and judgment.

N.C. Gen. Stat. § 1-294 (2007) provides:

When an appeal is perfected as provided by this Article it stays all further proceedings in the court below upon the judgment appealed from, or upon the matter embraced therein; but the court below may proceed upon any other matter included in the action and not affected by the judgment appealed from.

In *In re Will of Dunn*, 129 N.C. App. 321, 500 S.E.2d 99, *disc. review denied*, 348 N.C. 693, 511 S.E.2d 645 (1998), our Court held:

In this case, both parties submitted petitions for costs and attorneys' fees with the intent that the court would rule on the matter. The trial court's decision to award costs and attorneys' fees was not affected by the outcome of the judgment from which caveator appealed; therefore, the trial court could properly proceed to rule upon the petitions for costs and attorneys' fees after notice of appeal had been filed and served.

*Id.* at 329-30, 500 S.E.2d at 104-05.

In the directed verdict order and judgment entered in the case before us, the trial court ordered that "the costs of this action shall be taxed against [Appellant.]" Therefore, the parties were aware that the trial court had ordered that costs be taxed against Appellant and that the trial court would thereafter specifically determine the amount of the costs. We hold that the judgment from which Appellant appealed was not affected by the interim order and final order on the motion to tax costs. Accordingly, the trial court retained jurisdiction to enter the challenged orders.

## XII.

**[14]** Appellant also argues the trial court erred by failing to order a stay of execution on the money judgment. In its interim order on the motion to tax costs, the trial court stated as follows: "Execution on the money judgment in this case is not stayed because [Appellant] has not fully complied with N.C.G.S. § 1-289, N.C.G.S. § 1-293, and Rule 62 of the North Carolina Rules of Civil Procedure[.]"

North Carolina Rule of Civil Procedure 62(d) provides: "When an appeal is taken, the appellant may obtain a stay of execution,

subject to the exceptions contained in section (a), by proceeding in accordance with and subject to the conditions of G.S. 1-289, G.S. 1-290, G.S. 1-291, G.S. 1-292, G.S. 1-293, G.S. 1-294, and G.S. 1-295." N.C. Gen. Stat. § 1A-1, Rule 62(d) (2007). Pursuant to N.C. Gen. Stat. § 1-289(a) (2007),

> [i]f the appeal is from a judgment directing the payment of money, it does not stay the execution of the judgment unless a written undertaking is executed on the part of the appellant, by one or more sureties, to the effect that if the judgment appealed from, or any part thereof, is affirmed, or the appeal is dismissed, the appellant will pay the amount directed to be paid by the judgment, or the part of such amount as to which the judgment shall be affirmed, if affirmed only in part, and all damages which shall be awarded against the appellant upon the appeal, except as provided in subsection (b) of this section.

In the present case, Appellant deposited the sum of $810,647.39 with the clerk of court. However, the directed verdict order and judgment from which he appealed provided that "interest shall be calculated at 8% per annum from February 18, 2002 on all amounts awarded to Plaintiffs and from October 10, 2006 on all non-punitive amounts awarded to [C]ross-[C]laimants. Further, the costs of this action shall be taxed against [Appellant.]" Appellant did not deposit these amounts with the clerk of court and, therefore, did not satisfy the requirements of N.C.G.S. § 1-289 to post a bond in "the amount directed to be paid by the judgment[.]" *See* N.C.G.S. § 1-289(a).

N.C. Gen. Stat. § 1-293 (2007) further provides that a trial court may stay execution of a judgment on special motion after "the undertaking requisite to stay execution on the judgment has been given, and the appeal perfected[.]" However, Appellant in the present case took no action following the insufficient deposit with the clerk of court and, therefore, did not proceed in accordance with N.C.G.S. § 1-293. We overrule these assignments of error.

## XIII.

Plaintiff has failed to set forth, or cite authority in support of, his remaining assignments of error, and we deem them abandoned. *See* N.C.R. App. P. 28(b)(6) (stating that "[a]ssignments of error not set out in the appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned.").

Affirmed.

Judges WYNN and CALABRIA concur.