Wortman v. Hutaff, 2016 NCBC 36.

STATE OF NORTH CAROLINA

COUNTY OF UNION

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
15 CVS 1735

JUSTIN TODD WORTMAN;
JUDIE MOSER SHEPARD;
CHELSEY SHEA FELTS; and
DARBY VON WORTMAN,

      Plaintiffs,

   v.

RICHARD R. HUTAFF,

      Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

**ORDER & OPINION**

{1}     THIS MATTER is before the Court on Defendant Richard R. Hutaff's Motion to Dismiss ("Motion"). For the reasons explained below, Hutaff's Motion is DENIED.

*Spengler & Agans, PLLC by Eric Spengler, and Fitzgerald Law, P.C. by Andrew L. Fitzgerald for Plaintiffs.*

*Poyner Spruill LLP by T. Richard Kane and John M. Durnovich for Defendant.*

Gale, Chief Judge.

## I.    INTRODUCTION

{2}     Plaintiffs are beneficiaries of the late Dan L. Moser's ("Mr. Moser") will, which they claim, in conjunction with a pourover trust, left to Plaintiffs all of Mr. Moser's interest in an LLC that owned a golf course as its primary asset. Defendant Richard R. Hutaff ("Hutaff") and former defendant Thomas M. Moyer II ("Moyer") were coexecutors of Mr. Moser's estate and cotrustees of the pourover trust. They made no effort to distribute Mr. Moser's interest in the LLC to the Plaintiffs before they resigned as coexecutors and cotrustees. Plaintiffs complain that Hutaff's and Moyer's failure to distribute the LLC interest was a violation of their fiduciary duties and, as a result, Plaintiffs should recover from Hutaff any

reduction in the value of the LLC interest that Hutaff could have prevented. Hutaff contends that Plaintiffs' claims are time-barred by the applicable statute of limitations and that, even if the claims are not time-barred, he was not the proximate cause of Plaintiffs' loss.

{3} The Court concludes that a determination of the validity of Hutaff's various defenses must await a more-developed record and that the Motion must therefore be denied.

## II. PARTIES

{4} Plaintiff Justin Todd Wortman ("Wortman") is a resident of Los Angeles, California. Plaintiffs Judie Moser Shepard, Chelsey Shea Felts ("Felts"), and Darby Von Wortman are residents of Union County, North Carolina.

{5} Hutaff is a resident of Union County, North Carolina, and is an attorney and certified public accountant licensed to practice both disciplines in North Carolina.

{6} Former defendant Moyer is a resident of Union County, North Carolina, and is a certified public accountant licensed to practice in North Carolina.

## III. PROCEDURAL BACKGROUND

{7} Plaintiffs first initiated a lawsuit against Hutaff and Moyer on December 2, 2010. Plaintiffs voluntarily dismissed that lawsuit without prejudice on July 16, 2014.

{8} Pursuant to Rule 41(a)(1) of the North Carolina Rules of Civil Procedure ("Rules"), Plaintiffs initiated this new lawsuit against Hutaff and Moyer on July 7, 2015. The Complaint asserted claims for breach of fiduciary duty, professional negligence, and punitive damages. This action was designated as a mandatory complex business case on July 15, 2015, and assigned to the undersigned on July 16, 2015.

{9} Hutaff filed the Motion now before the Court on August 21, 2015.

{10} After the Motion was briefed, the Court heard argument on October 26, 2015. Based on arguments presented at the hearing, the Court requested that Plaintiffs file a supplemental brief to better delineate their theory of recovery. Plaintiffs did so on November 16, 2015. On November 18, 2015, Plaintiffs dismissed all claims against Moyer with prejudice and filed their First Amended Complaint, which alleges claims against Hutaff only. The parties agreed that the earlier-filed Motion, along with their briefs, should be deemed to have been made or filed in regard to the First Amended Complaint. On December 9, 2015, Hutaff filed his supplemental response.

{11} The Motion is now ripe for ruling.

## IV.    FACTUAL BACKGROUND

{12} The Court reviews the allegations of the First Amended Complaint in the light most favorable to the Plaintiffs. *See Ford v. Peaches Entm't Corp.*, 83 N.C. App. 155, 156, 349 S.E.2d 82, 83 (1986). On a motion to dismiss made under Rule 12(b)(6), the Court must inquire "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory." *Crouse v. Mineo*, 189 N.C. App. 232, 237, 658 S.E.2d 33, 36 (2008) (quoting *Harris v. NCNB Nat'l Bank of N.C.*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987)). The Court assumes the allegations in the First Amended Complaint to be true solely for purposes of resolving the Motion.

### A. Creation of Carolina Golf Developers, LLC, the Will, and the Trust

{13} On September 13, 1995, Mr. Moser, the late Carl A. Boggs, Jr. ("Boggs"), and L. Carlton Tyson ("Tyson") formed Carolina Golf Developers, LLC (the "LLC"), a North Carolina limited-liability company, as equal one-third owners. The LLC owned Emerald Lake Golf Club ("Emerald Lake"). Sometime prior to February 20, 2006, Boggs formed KLJ Properties, LLC ("KLJ"), to which he transferred his ownership in the LLC.

{14}    On August 6, 2002, Mr. Moser executed a Last Will and Testament (the "Will"), in which he nominated Hutaff and Moyer as coexecutors of his estate.

{15}    On June 6, 2005, Mr. Moser, by amendment, appointed Hutaff and Moyer to serve as successor cotrustees of the Dan L. Moser Revocable Trust Amended and Restated June 6, 2005 (the "Trust") upon Mr. Moser's death.

{16}    Mr. Moser died testate on February 20, 2006.  On that date, Mr. Moser, Tyson, and KLJ were equal one-third owners of the LLC.

## B.  Requirements of the Will and the Trust

{17}    The Will bequeathed Mr. Moser's tangible personal property to his widow, Sharon Ball Moser ("Ball Moser").  The Will provided that any residual from Mr. Moser's estate was to be poured over into the Trust, which would then be managed by Hutaff and Moyer as cotrustees for the benefit of the Trust's beneficiaries.  Because the Will did not specifically bequeath Mr. Moser's interest in the LLC to Plaintiffs, the LLC interest became a portion of the residual that was subject to the Will's pourover provisions.

{18}    Article VII of the Trust provided that Ball Moser was to receive the equivalent of $1 million and that the interest in the LLC was to be delivered to Plaintiffs.

{19}    The LLC's operating agreement stated that in the event of a member's death, the member's personal representative would have all of the rights of a member for the purpose of settling or managing the deceased member's estate.  It also contained a process for selling a member's interest to another member and permitted a member's interest to be sold to a nonmember upon the approval of a majority of the LLC's ownership.  Further, under the operating agreement, an interest holder had to take certain actions to effectuate sales or transfers of an ownership interest to a third party.  Plaintiffs complain that Hutaff failed to attempt such a sale or transfer when he had the opportunity to do so.

{20}    The Trust also provided that the late Lawrence P. Moser Sr. would be the beneficiary of a private charitable trust, which would be funded by $500,000

from the Moser estate, with the residual of that trust to be paid to Mineral Springs United Methodist Church (the "Church") after Lawrence P. Moser Sr.'s death.

{21}     Hutaff and Moyer deposited the Will with the Union County Clerk of Court ("Clerk") for probate on February 23, 2006, and applied for appointment as coexecutors.  Their application listed Ball Moser, Hutaff, and Moyer as beneficiaries of the Moser estate.  The Clerk appointed Hutaff and Moyer as coexecutors.

## C.  Hutaff's Actions as Cotrustee and Coexecutor

{22}     In July 2006, Ball Moser filed a dissent to the Will.  She subsequently filed an action against Hutaff and Moyer in their capacities as coexecutors of the Moser estate and cotrustees of the Trust.  The Church intervened.  That litigation continued until November 19, 2007.

{23}     Hutaff and Moyer engaged Dixon Hughes PLLC ("Dixon Hughes") to value the LLC as of the date of Mr. Moser's death.  Dixon Hughes delivered the valuation on August 7, 2006.  The valuation was based on historical costs from 1995, and it assigned a fair-market value of $284,700 to Mr. Moser's one-third interest in the LLC as of the date of Mr. Moser's death on February 20, 2006. Plaintiffs complain that the valuation reflected no appreciation in value from the 1995 cost values.

{24}     Sometime during 2006, Wortman learned of the valuation, called Hutaff to object to Dixon Hughes's failure to appraise the LLC's land, and requested that Hutaff and Moyer order such an appraisal.  Hutaff refused, stating that he had an obligation to minimize the tax burden on the Moser estate.  Wortman did not subsequently arrange for an appraisal.

{25}     On January 17, 2007, the Clerk granted Hutaff and Moyer's request for executors' commissions of $746,663.67.  On February 12, 2007, Hutaff and Moyer distributed $668,499.81 from the Trust to Ball Moser and $336,971.00 from the Trust to the Church.

{26}     On February 23, 2007, an attorney for Wortman and Felts wrote a letter to Hutaff and Moyer requesting a full copy of the Trust documents and

indicating that the other two LLC members might be interested in purchasing the Moser estate's one-third interest. The letter requested that Hutaff provide Wortman and Felts with information related to the Plaintiffs' beneficiary interest in the LLC. Hutaff was generally unresponsive to Plaintiffs' questions but indicated that he was not responsible as coexecutor or cotrustee to assist with the sale of the Moser estate's interest in the LLC. He offered to assist Plaintiffs with the sale if they paid him to do so.

{27}     On August 16, 2007, Wortman and Felts's attorney sent another letter to Hutaff that specifically requested a meeting to discuss the beneficiaries' interests in the LLC. Hutaff did not respond.

{28}     On September 4, 2007, Ball Moser and the Church entered into an agreement under which they agreed to divide the assets of the Moser estate, giving certain specific assets of the estate to the Church and all other assets to Ball Moser. The litigation involving Ball Moser, the Church, Hutaff, and Moyer was terminated by a release and settlement agreement on November 19, 2007 ("Settlement Agreement"). The Settlement Agreement allowed Hutaff and Moyer to resign as coexecutors of the estate and cotrustees of the Trust, contingent on their filing of a final accounting of the Moser estate. Ball Moser and the Church agreed not to contest Hutaff and Moyer's executors' commissions.

{29}     Plaintiffs were not parties to the Settlement Agreement nor were they privy to the negotiations leading up to it. The Settlement Agreement did not address the LLC interest. Neither Ball Moser nor the Church has asserted any ownership interest in the LLC.

{30}     On November 29, 2007, Hutaff and Moyer filed with the Clerk a final accounting, which reflected that the Moser estate's value as of that date was $10,659,067.88.

{31}     On December 6, 2007, Hutaff and Moyer filed a document with the Clerk entitled "Resignation of Co-Executors and Trustees," which contained an effective date of December 3, 2007. Hutaff and Moyer did not notify Plaintiffs of

their resignation.[1]  Miley W. "Bucky" Glover ("Glover"), a certified public accountant, was granted Letters of Administration C.T.A. for the Moser estate by the Clerk on the same day.[2]

{32}    While they were coexecutors and cotrustees, Hutaff and Moyer made no effort to transfer or liquidate the Moser estate's interest in the LLC.  Plaintiffs allege that there were willing buyers for the estate's LLC interest during the period that Hutaff was coexecutor.

{33}    Article X(2) of the Trust provides that Ball Moser was to appoint a successor or substitute trustee if Hutaff and Moyer ceased in their capacity as trustees.  She has not appointed any successor.

{34}    In 2009, Boggs, Tyson, and their sons allowed the LLC to default on its mortgage on Emerald Lake.  They then formed a new company, Tournament Drive Investors, LLC ("TDI"), for the purpose of acquiring Emerald Lake at a foreclosure sale.  TDI purchased Emerald Lake at foreclosure on July 7, 2009, for $1.9 million, creating a $411,926.46 deficiency on the mortgage.  Several of the Plaintiffs complain that they were not allowed to participate in the foreclosure sale.

{35}    After they initiated this litigation, Plaintiffs obtained a valuation of Emerald Lake that values a one-third interest in Emerald Lake as of December 3, 2007, at approximately $600,000.00.  Hutaff challenges the valuation, particularly on the grounds that it fails to account for the LLC's debt.  That specific challenge is not a proper subject to be resolved on a Rule 12(b)(6) motion.

## V.    ANALYSIS

{36}    Hutaff argues that Plaintiffs' First Amended Complaint fails to state a claim upon which relief can be granted because Plaintiffs' claims are time-barred

[1] Though Plaintiffs' original Complaint in this action asserted that Hutaff and Moyer's resignation as cotrustees was ineffective, Plaintiffs' First Amended Complaint contains no such allegation.

[2] Ball Moser had nominated Glover to serve as Administrator C.T.A. of the Moser estate earlier in December 2007.

under the applicable statute of limitations, since the acts or omissions of which Plaintiffs complain occurred more than three years before Plaintiffs filed their initial Complaint. Plaintiffs argue that the continuing-wrong doctrine defeats Hutaff's statute-of-limitations defense. Hutaff's Motion further asserts that the Court should conclude as a matter of law either that the Moser estate's LLC interest had no value or that Hutaff's acts or failures to act were not the proximate cause of Plaintiffs' loss. Hutaff also argues that Plaintiffs have failed to plead sufficient facts to warrant punitive damages.

## A. The Court Cannot Resolve Whether the Claims Are Untimely Solely on the Allegations of the Pleadings.

{37} At least for purposes of the Motion, Hutaff does not dispute that he owed fiduciary duties while he served as coexecutor of the Moser estate or as cotrustee of the Trust. Hutaff was statutorily responsible as coexecutor "for any loss to the estate arising from [his] failure to act in good faith and with such care, foresight and diligence as an ordinarily reasonable and prudent person would act with the ordinarily reasonable and prudent person's own property under like circumstances." N.C. Gen. Stat. § 28A-13-10(c) (2015). Similarly, Hutaff was statutorily required as cotrustee to "administer the [T]rust as a prudent person would," *id.* § 36C-8-804, and to do so "in good faith, in accordance with [the Trust's] terms and purposes and the interests of the beneficiaries," *id.* § 36C-8-801. Hutaff's duties continued until his resignations as coexecutor and cotrustee became effective. Those resignations occurred within the three-year limitations periods provided by sections 1-52 and 1-15 of the General Statutes. *See id.* § 1-52(1), -15(c).

{38} Plaintiffs argue that Hutaff's wrong was not complete until he resigned as coexecutor and cotrustee without having taken action to protect Plaintiffs' beneficiary interest in the LLC, and as a result, Plaintiffs' claims are timely. Hutaff counters that the only specific acts or omissions of which Plaintiffs complain all occurred more than three years before Plaintiffs initiated the litigation and, therefore, the claims fall outside the limitations period.

{39}    The continuing-wrong doctrine[3] may serve to prevent a claim that is based on a continuing violation from being time-barred by tolling the applicable statute of limitations until the wrongful act ceases. *Williams v. Blue Cross Blue Shield of N.C.*, 357 N.C. 170, 178–81, 581 S.E.2d 415, 423–24 (2003) (holding that the accrual of a claim that challenged the constitutionality of a statute should be measured using the dates that the statute was wrongfully applied against the plaintiff, not the date the statute was first enacted). The doctrine applies when there is a wrong that was "occasioned by continual unlawful acts" but it does not apply when there are only continual harmful effects from an earlier singular wrongful act. *Id.* at 179, 581 S.E.2d at 423 (quoting *Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir. 1981)). Acts that constitute individual wrongs and that follow an original act that was not necessarily wrongful may trigger separate claims that are measured by their own separate limitations periods. *See id.* at 178–81, 581 S.E.2d at 423–24.

{40}    On its face, the First Amended Complaint does not allow the Court to determine the time at which Plaintiffs were harmed by Hutaff's action or inaction. Plaintiffs filed their suit less than three years before the effective date of Hutaff's resignation. It is premature to determine how the statute of limitations might apply to the facts as they will ultimately develop. For that reason, the Court concludes that it should not resolve the limitations defense on a Rule 12(b)(6) motion. The issue may later be the appropriate subject for a Rule 56 motion, or ultimately, a jury question may be presented as to the time at which Plaintiffs' claims accrued. *See Blythe v. Bell*, No. 11 CVS 933, 2013 NCBC LEXIS 7, at *52 (N.C. Super. Ct. Feb. 4, 2013) ("Although defining the precise date this breach occurred may require resolution of disputed facts, a jury can affix the breach at a discrete point in time . . . .").

---

[3] This is sometimes known as the continuing-violation doctrine. *See Williams v. Blue Cross Blue Shield of N.C.*, 357 N.C. 170, 179, 581 S.E.2d 415, 423 (2003).

**B. Plaintiffs Have Pleaded Minimally Sufficient Facts to Support that Plaintiffs' Damages Were Proximately Caused by Hutaff's Failure to Liquidate or Distribute the Moser Estate's Interest in the LLC.**

{41}    Hutaff contends that even a timely claim for breach of fiduciary duty should be dismissed because Hutaff's action or inaction cannot be found to be the proximate cause of any loss that Plaintiffs incurred when the bank foreclosed on Emerald Lake, the Moser estate's one-third interest in the LLC was extinguished, and TDI acquired Emerald Lakes through a foreclosure sale.

{42}    To recover, Plaintiffs must ultimately provide proof that demonstrates that Hutaff's alleged breach was the proximate cause of their injuries. *See Rorrer v. Cooke*, 313 N.C. 338, 355, 329 S.E.2d 355, 365–66 (1985). But again, under the allegations in this case, the Court concludes that the issue of proximate cause should not be decided upon a Rule 12(b)(6) motion.

{43}    Plaintiffs pleaded that Hutaff knew or should have known that Emerald Lake was a bad investment that would continue to decline in value, and that any remaining value could be preserved only by liquidating the Moser estate's one-third interest in the LLC. Taken as true, the Court finds this allegation to be minimally sufficient to support Plaintiffs' claim that Hutaff's failure to distribute the interest in the LLC was a breach of his duty. *See Fortune v. First Union Nat'l Bank*, 87 N.C. App. 1, 6, 359 S.E.2d 801, 805 (1987) (holding that an executor's retention of an estate's asset was wrongful, when a reasonable person would not have retained the asset), *rev'd on other grounds*, 323 N.C. 146, 371 S.E.2d 483 (1988).

**C. The Court Defers Addressing Plaintiffs' Punitive-Damages Claim.**

{44}    The Court is skeptical that this is an appropriate case for punitive damages. However, the Court will defer its final determination as to the question of punitive damages until it is asked to do so upon a subsequent motion based on a more-developed record. The Court does not envision that deferring a ruling on this issue will cause discovery to be any broader than it would otherwise be on the

liability issues in this matter. The Court can, if necessary, revisit the issue to determine if it should allow discovery limited to the punitive damages claim.

## VI.  CONCLUSION

{45}  For the reasons stated above, the Motion is DENIED, without prejudice to the undersigned or to any other presiding judge revisiting questions regarding the statute of limitations, the proximate cause of any damages, or the right to submit the issue of punitive damages to the jury upon a more-developed record.

IT IS SO ORDERED, this the 11th day of May, 2016.


/s/ James L. Gale
_____
James L. Gale
Chief Special Superior Court Judge
   for Complex Business Cases